CHARLES B. CALVERT AND GEORGE H. CALVERT, PLAINTIFFS IN ERROR, *v.* JOSEPH H. BRADLEY AND BENJAMIN F. MIDDLETON.

Where a lease was made by several owners of a house, reserving rent to each one in proportion to his interest, and there was a covenant on the part of the lessee that he would keep the premises in good repair and surrender them in like repair, this covenant was joint as respects the lessors, and one of them (or two representing one interest) cannot maintain an action for the breach of it by the lessee.

The question examined, whether a mortgagee of a leasehold interest, remaining out of possession, is liable upon the covenants of the lease. The English and American cases reviewed and compared with the decisions of this court upon kindred points. But the court abstains from an express decision, which is rendered unnecessary by the application of the principle first above mentioned to the case in hand.

THIS case was brought up by writ of error from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington.

It was an action of covenant brought by the Calverts against Bradley and Middleton, who were the assignees of the unexpired term and property in the house for the purpose of paying the

creditors of the lessee. The lease was of the property called the National Hotel, in Washington, owned as follows:

|  | Shares. |
|---|---|
| George H. Calvert and Charles B. Calvert, jointly | 205 |
| Roger C. Weightman | 66 |
| Philip Otterback | 22 |
| William A. Bradley | 20 |
| Robert Wallach, represented by his guardian, Alexander Hunter | 2 |
| Total shares | 315 |

All of the above named persons signed the lease.

The history of the case and the manner in which it came up are set forth in the opinion of the court.

It was argued by *Mr. Wylie*, for the plaintiffs in error, and by *Mr. Bradley* and *Mr. Lawrence*, for the defendants.

The points made by the counsel for the plaintiffs in error were the following.

Two questions arise out of the record for the decision of this court:

*First.* Whether the plaintiffs have brought their action in proper form, without joining with the other covenantees.

*Second.* Whether the defendants, being assignees of the term, and having accepted the same for the purpose of fulfilling a trust, are liable on the covenants of the lease, as other assignees would be.

*First point.* In this case the covenant was with the covenantees jointly and severally; but as the two Calverts were the only parties whose interest in the property, and whose demise was joint, it was probably the intention of the parties that the term "jointly," in the covenants, was intended to apply to their case, and that as to all the rest the covenants were to be several. That construction, at least, will render all parts of the instrument consistent.

There is a distinction as to these terms "jointly and severally," when applied to covenantees, and when applied to covenantors. Covenantors may bind themselves jointly and severally, and they will be so bound, because that is their contract. But covenantees must bring their actions jointly or severally, according as their interests are joint or several. The rule is laid down by Lord Denman in Foley v. Addenbrooke, 4 Adol. & E. 205, 206, in the following terms: " But the result of the cases appears to be this, that where the legal interest and cause of action of the covenantees are several, they should sue separately, though the covenant be joint in terms; but the several interest and the several ground of action must distinctly appear, as in the case of cove-

49 *

nants to pay separate rents to tenants in common upon demises by them."

So in James v. Emery, 8 Taunt. Rep. 244, it was said by C. J. Gibbs: "The principle is well known, and fully established, that if the interest be joint, the action must be joint, although the words of the covenant be several; and if the interest be several, the covenant will be several, although the terms of it be joint."

The more recent decisions all refer to Slingsby's case, 5 Rep. 18, 19, as the leading authority on this question; then to Anderson v. Martindale, 1 East, 497; Eccleston v. Clipsham, 1 Saund. 153; Wilkinson v. Lloyd, 2 Mod. Rep. 82, besides the cases already referred to; S. P. in Slater v. Magraw, 12 Gill & J. 265.

The rule, as above established, is subject to modification where one of the covenantees possesses no beneficial interest, in which case the action must be joint; for though the covenant be separate, the legal interest is joint. Anderson v. Martindale, 1 East, 497; Southcote v. Hoare, 3 Taunt. 87; Scott v. Godwin, 1 Bos. & Pul. 67; which explains the decision in the case of Bradburn v. Botfield, 14 Mees. & Wel. 559.

*Second point.* The question is whether a party who accepts an assignment of lease in a deed of trust, as a security for money lent, or debt incurred, is liable upon the covenants in the lease, as he would be if the assignment were absolute, though he has never occupied the premises in fact?

On this question the decision in Eaton v. Jaques, Douglas's Rep. 460, is directly adverse to the plaintiffs in this cause.

That decision, however, was at the time not acquiesced in by other judges, or by the profession, and has since been repeatedly overruled, and stands alone and unsustained by any other authority. See the case of Williams v. Bosanquet, 1 Brod. & B. 238; Platt on Cov. 3 Law Lib. 488; Taylor's Land. & Tenant, 223; Turner v. Richardson, 7 East, 344; Walter v. Cronly, 14 Wend. 63.

The doctrine of Eaton v. Jacques has been followed in New York, (see 4 Kent's Comm. 153, 154,) but the doctrine of that case was repudiated as to the District of Columbia in the cases of Stelle v. Carroll, 12 Pet. 201; and Van Ness v. Hyatt, 13 Ib. 294.

Again, these trustees might themselves have sold and conveyed the leasehold interest in question. Suppose that had been done, would not the purchaser have taken the interest, subject to all the covenants in the lease? That cannot be questioned. If so, then the trustees must have held the lease in the same manner themselves; for they could not have assigned the lease

subject to a burden from which it was exempt whilst in their own hands.

Finally, how does the question stand in reference to considerations of justice and equity?

Suppose the lease had been one of great value. Blackwell chose to incur debts, and to make an assignment of all his property in the world, not only to secure particular favored creditors for debts already incurred, but for all liabilities which he might afterwards incur to them. The deed of trust is recorded, and protects this property from the just obligations imposed by the covenants in the lease. He holds the property by permission of the trustees from year to year, until the lease is about to expire, when he absconds, and abandons the premises in a dilapidated condition. The trustees then come forward, and under their deed of trust take possession of all the property on the premises, sell it, and pay the favored creditors in full from the proceeds; but because the lease is about to expire, they repudiate that, together with its covenants, because it was unprofitable to perform them. They had received and accepted the lease when it was made, and when it was valuable; but when it was about to expire they reject it, because to hold it, and perform its covenants, or to sell it, would be no longer to their advantage.

The points made by the counsel for the defendants in error, were the following:

*First.* That the action is improperly brought, and the first vice in the pleading being in the plaintiffs' declaration, on general demurrer, the judgment of the court must be affirmed.

*Second.* Failing in this, they maintain that the matters set up in the second and third pleas, are properly pleadable to this action, and furnish a complete bar to plaintiffs' recovery.

First. As to the first general point, they say:

1. The action on the covenant to repair, in this demise, should have been a joint action by all the landlords.

If the covenant is expressly joint, the action must be joint; and if it be joint and several, or several only in the terms of it, yet, if the interest be joint, and the cause of action be joint, the action must be joint. Slingsby's Case, 5 Co. 18, (6); Eccleson *v.* Clipsham, 1 Saund. 153; 2 Keb. 338, 339, 347, 385; Spencer *v.* Durant, Comb. 115; 1 Show. 8; Johnson *v.* Wilson, Willes, 248; 7 Mod. 345; Saunders *v.* Johnson, Skin. 401; Hopkinson *v.* Lee, 14 Law J. (N. S.) 101; Anderson *v.* Martindale, 1 East, 497; Kingdom *v.* Jones, T. Jones, 150.

And the reason is clearly given in Anderson *v.* Martindale, 1 East, 500, where the court say: If both parties were allowed to bring separate actions for the same interest, where only one

duty was to be performed, which of them ought to recover for the non-performance of the covenant ?

If the covenant is equivocal, the interest of the parties will determine the right of action, and make it joint or several, as the interest and cause of action is joint or several.    Sheppard's Touchstone, by Preston, 166.

If tenants in common make a lease to another, rendering to them a certain rent during the term, " the tenants in common shall have an action of debt against the lessee, and not divers actions, for that the action is in the personalty.    Littleton, § 316.    And this because the demise is joint; but if the demise were several, whether in the same instrument or not, the action must be several for the rent, because the interest and cause of action is several.    Wilkinson *v.* Hall, 1 Bing. N. C. 713; 1 Scott, 675.

The action must be joint in all matters that concern the tenements in common (and where the injury complained of is entire and indivisible) action on the case for nuisance, &c., detinue of charters — *warrantia chartæ*; case for ploughing lands whereby cattle were hurt; trespass for breaking into their house; breaking their inclosure or fences; feeding, wasting, or defouling their grass; cutting down their timber; fishing in their piscary, &c.; because in these cases, though their estates are several, yet the damages survive to all; and it would be unreasonable to bring several actions for one single trespass; so if there be two tenants in common, and they make a bailiff, and one of them dies, the survivor shall have an action of account, for the action given to them for the arrearages of rent was joint.    See Archbold's Civil Plead. tit. Joinder of Plaintiffs, 54, and the cases cited; Bac. Ab., (Dub. Ed. 1786,) tit. Joint-Tenants and Tenants in Common, let. K. and cases cited.

Bacon says: A makes a lease in which the lessee covenants to repair; lessor grants his reversion by several moieties to several persons, and lessee assigns to J. S.    In an action of covenant by the grantees of the reversion for not repairing, the question was. If two tenants in common of a reversion, could join in bringing an action of covenant against the assignee ?    And it was held, that they could and ought to join in this case, being a mere personal action according to Littleton's rule, which was held general, without relation to any privity of contract; and that the covenant being indivisible, the wrong and damages could not be distributed, because uncertain;" and he cites the same cases that Archbold does.    Archbold says, after speaking of the several cases of personal actions in which they must join, and enumerating the cases in which they need not join, " But in all other cases where that which is sued for is not distributable, as in

covenant for not repairing where the damages are not distributable because uncertain, tenants in common must join in the action."

In Foley v. Addenbrooke, 4 Q. B. 207, 3 G. & D. 64, Lord Denman says, " The result of the cases appears to be this, that when the legal interest and cause of action of the covenantees are several, they should sue separately, though the covenant be joint in its terms; but the several interest and several ground of action must distinctly appear."

And in Bradburne v. Botfield, 14 M. & W, 574, Parke, B. delivering the opinion of the court, says: " It becomes unnecessary to decide whether one of several tenants in common, lessors, could sue on a covenant with all to repair, as to which there is no decisive authority either way. That all could sue is perfectly clear;" and he cites the cases referred to by Bacon and Archbold. See also, Simpson v. Clayton, per Tindal, C. J. 4 Bing. N. C. 781, and Wakefield v. Brown, Q. B. Trin. T. 1846, 7 Law Times, 450.

These two cases of Foley v. Addenbrooke, and Bradburne v. Botfield, are cases in point, and show that—if there are covenants which are joint and several in the same instrument, and there is any one act or thing to be done for the redress of which they may all join, and there are covenants where they may sue severally, then the action for a breach of that covenant in which all may join, must be a joint action, and the action for the breach of any covenant when all cannot join, must be a separate action. See also Sorsbie v. Park, 12 M. & W. 146, and see the query put by Parke, B. at p. 566, 14 M. & W. " If there is a demise by one tenant in common as to his moiety, and a demise by the other tenant in common as to the other moiety, by the same instrument, and there is a covenant to repair, I want you to show that each may sue separately"

In this case the covenants are joint and several: they all may join in an action for repairs; they all may join for a failure to pay taxes; they are all jointly interested in the possession and mode of enjoyment; the covenant for repairs affects only the reversioners' possession and enjoyment, not the title; it is a joint and several demise, and the covenant is to them jointly and severally for a thing which is not distributable. They must join.

The non-joinder of plaintiffs on oyer may be taken advantage of on the plea of *non est factum*, and is for the court. Eccleston v. Clipsham, 1 Saun. 154, n. 1.

*Second.* The matters set up in the second and third pleas, are properly pleadable in bar.

*First plea.* It is a conveyance of a leasehold interest to third parties upon trust to secure a debt.

The possession is to remain in the assignor until default, and he is to pay the rent.

The assignment is not signed or sealed by the assignees, and they never took possession.

*Second plea.* The plaintiffs themselves took possession before the expiration of the term, and on the default of the assignor, and offered the premises for rent, and made alterations and repairs before the expiration of the term.

It is a trust, and not simply a mortgage.  It is a confidence, not issuing out of the land, but as a thing collateral, annexed in privity to the estate of the land, and to the person touching the land.   Co. Litt. 272, (b.)   While a mortgage is a debt by specialty, (2 Atk. 435,) secured by a pledge of lands of which the legal ownership is vested in the creditor, but of which in equity the debtor and those claiming under him remain the actual owner until foreclosure.   Coote on Mort. 1.

Here is a special trust, ministerial in its character, (Lewin on Trusts, 21, 22,) in which the trustee holds the legal estate with a power to sell and convey for the benefit of the debtor and creditor.   He takes no interest personally in the land.   He has no right to the possession, except for the mere purposes of sale ; he has no right to the rents, issues, profits, or other income from the land.   In all this he differs from a mortgagee.

He is a mere agent of both parties, as a means of holding and transmitting the title to others.

Can he be bound personally by the covenant of those from whom his authority emanates ?

But it is said he is a mortgagee of a leasehold interest, and as such, is bound by a covenant to repair the mortgaged premises.   And for this Williams *v.* Bosanquet, 1 Bro. & Bing. 238, is relied upon.   It is undoubtedly true that that case has overruled Eaton *v.* Jaques, 2 Doug. 456, and is to be taken as the law of England at this day.

Eaton *v.* Jaques was decided 10th November, 1783.   It proceeded on the ground that it was not an assignment of all the mortgagor's estate, title, right, &c.

Williams *v.* Bosanquet goes upon the ground that privity of estate existed by acceptance of the assignment, which it affirms to be equal to possession, and privity of contract by the assignment of a contract made with the lessee and his assigns, and thus all the estate, right, title, &c., of the mortgagee passed by the assignment.

" The American doctrine," says Mr. Greenleaf, note 1, p. 101, "to the 2d vol. of his edition of Cruise, " as now generally settled, both at law and in equity, is, that as to all the world except the mortgagee the freehold remains in the mortgagor as it ex-

isted prior to the mortgage." Of course he retains all his civil rights and relations as a freeholder, and may maintain any action for an injury to his possession or inheritance as before. And he cites numerous cases in Maine, Massachusetts, Connecticut, New York, Pennsylvania, and Maryland.

At page 110, note to Tit. 15, Mortgage, ch. 11, § 14, referring to the cases of Eaton *v.* Jaques, and Bosanquet *v.* Williams: " It is well settled, as a general doctrine, that a mere legal ownership does not make the party liable, in cases like those supposed in the text, without some evidence of his possession, also, or of his actual entry." It is clearly settled in the law of shipping, and he cites numerous cases, to which reference is here made, that fully sustain his proposition. And he proceeds to show that Williams *v.* Bosanquet rests on purely technical grounds. Reference is made to the whole note.

The case cited in that note from 4 Leigh, 69, went upon the ground that the parties came into equity, seeking to avail themselves of the trust, and the court decided they must take it charged with the burdens upon it.

In addition to the cases referred to in these notes, see the Maryland cases, viz.

Payment of the mortgage debt re-invests the mortgagor with his title without release. Paxson's Lessee *v.* Paul, 3 H. & McH. 400.

The mortgagor's interest is subject to the attachment law of 1795. Campbell *v.* Morris, 3 H. & McH. 535, 561, 562, 576.

Being condemned and sold under execution, the purchaser has a right to redeem. Ford et al. *v.* Philpot, 5 H. & J. 312, and see the reasoning of the chancellor in this case. The mortgagor is the substantial owner, and, so long as the equity of redemption lasts, may dispose of the property as he pleases.

Unless there is an agreement to the contrary, the mortgagee has a right to the possession of the mortgaged property, and trespass will not lie against him for taking it. Jamieson *v.* Bruce, 6 G. & J. 72.

But the mortgagee has an interest in the subject-matter not absolute, but only commensurate with the object contemplated by the mortgage, the security of the debt. Evans *v.* Merriken, 8 G. & J. 39.

The devisees of the mortgagor have a right to call on the executor to redeem out of the surplus over specific legacies. Gibson *v.* McCormick, 10 G. & J. 66.

The interest of the mortgagee passes to his executor; that of the mortgagor to the heir. Chase *v.* Lockerman, 11 G. & J. 185.

These cases clearly establish the proposition of Lord Mans-

field, in Eaton *v.* Jaques, that the whole estate, right, and interest, do not pass by the assignment of the lease, by way of mortgage.

They are supposed to be in conflict with Stell *v.* Carroll, 12 Pet. 205, and Van Ness *v.* Hyatt, 13 Pet. 294–300.

As to the first, it only affirms the common-law doctrine that there can be no dower in an equitable estate.

As to the second, it affirms the common-law doctrine that legal estates only are subject to execution at law. But the case referred to at p. 300, as a manuscript case, and which is supposed to be the case of Harris *v.* Alcock, 10 G. & J. 226, shows that where there is judgment against a party having an equitable interest, and execution issued and returned *nulla bona*, the judgment creditor may, through a court of equity, reach the equitable interests.

Again. The assignee of a lease by way of mortgage, where there is a covenant such as exists in this case, cannot be in, by privity of estate. Astor *v.* Hoyt, 5 Wend. 603. His liability arises solely from privity of estate — not of contract. Walton *v.* Cronly, 14 Wend. 63; and see Platt on Cov. 493, 494, and cases in notes *v* and *t*. He is liable, therefore, only for acts during his possession. Platt, 494 and 503, and cases cited.

Here the claim is for the whole period of the lease to the bringing of the suit. It is a covenant to keep in repair. It must be to keep it so while in his possession.

The third plea sets up, that the acts of plaintiff prevented or dispensed with any obligation of the defendants to repair.

As between the original parties, the duty can only be discharged by a release under seal. The assignee is in a different position. Platt, 493, 494. He may avoid it by assignment.

Here the assignment is by deed poll. The obligation of the assignee may be released by parol. A surrender of the premises without a release would be sufficient. The interference of the landlord, or any acts of ownership, by which the possession and enjoyment were prevented or impaired — especially the taking possession, offering to rent, and proceeding to make the repairs and such alterations as the landlord saw fit — amount to a waiver.

*Third Point.* This is an action of covenant. The foundation of such an action is the seal of the covenants.

The action will not lie on a deed poll against the grantee. Platt on Cov. 10–18, inclusive.

Comyn on Land. and Ten. 273, citing Mills *v.* Harris, from Bayley, J., London, October sittings, 1820.

An action on the case by the lessee will lie against the assignee, but covenant will not lie.

Here there was neither a sealing by the assignees, nor any possession under the lease; covenant will not lie.

The judgment of the Circuit Court was therefore right.

*Mr. Wylie,* in reply.

*1st Point.* The cause of action was several, because the interests were several. The interests being several, the covenants in the lease, it must follow, were several also. If the covenants were several, and they were broken, the breach and the cause of action must therefore be several. It would be a solecism to say that the cause of action was joint, upon a covenant, when the interests were several and the covenants several. The breach of the covenant and the cause of action must follow the quality of the covenant. If that be joint the breach of it is joint; if it be several the breach of it is several.

The lessors were tenants in common of the premises in question. Tenants in common are joint but in one respect. They have neither the unity of time, nor of title, nor of interest; but only the unity of possession. They can join therefore in an action only when there has been an injury to their united possession; as in the case of trespass, waste, &c.

The breach of the covenant complained of in the present action, was an injury only to the interests of the several lessors, and not to their possession; and their interests being several the covenants and the breach of them must be several. The case of Bradburne *v.* Botfield, 14 M. &. W. 574, which is so confidently relied upon by the defence, was decided upon an entirely different point. In that case the covenant was construed to be joint, because, as to one of the interests, there were trustees, and these trustees as well as their *cestuis que trust,* were parties to the demise and the covenant. Now if the covenant had been construed to be several in that case, then these trustees and their *cestuis que trust* might have sued for the same breach, and it would have been impossible to tell for which of them judgment could be rendered. The question was " What was to be done with the Foleys ? " and if both the trustees and their beneficiaries could sue separately for the same injury, then would follow the absurdity that " the whole was not equal to all its parts." And in the conclusion of the opinion delivered, the court expressly disclaim to decide the question now under examination. The very point was decided in Wilkinson *v.* Loyd, 2 Mod. Rep. 82. See also notes A. & B. to Eccleston *v.* Clipsham, 1 Saund. 153; James *v.* Emory, 8 Taunt. Rep. 244; Scott *v.* Godwin, 1 Bos. & Pul. 67; 9 A. & E. 222.

*2d Point.* The authorities already referred to leave no ground to doubt as to what is the doctrine of the common law on this

point. There can no longer be any question about that. The only question (if it can be a question at all) is, whether the common law, or some other law that we know nothing of, is the law of the District of Columbia. In some of the States this doctrine of the common law has been changed by express enactment, and in others the common law has been abrogated by a gradual course of judicial construction. But in this district there has been no enactment on the subject; nor has there been any gradual course of judicial construction to undermine and wear away the settled doctrines of the common law. And this court in Stelle *v.* Carroll and Van Ness *v.* Hyatt, already cited, has shown its determination to uphold the common law, against the invasion of new principles and doctrines, which had succeeded in driving out the common law from some of the States of the Union. Maryland is one of the States in which the common law has in this respect been changed by statute, since its cession to the United States of this portion of the District of Columbia; and the authorities of that State are therefore not to be considered in this case.

As to the position that an assignee of a lease is not liable on the covenants to repair, contained in it, that is a new doctrine, against which it is hardly necessary to refer to authorities.

Mr. Justice DANIEL delivered the opinion of the court.

The plaintiffs brought their action of covenant, in the court above mentioned, against the defendants, to recover of them in damages the value of repairs made by the plaintiffs upon certain property in the city of Washington, known as the National Hotel, which had been on the 17th of April, 1844, leased by the plaintiffs, together with Roger C. Weightman, Philip Otterback, William A. Bradley, and Robert Wallach, to Samuel S. Coleman, for the term of five years. This property was owned by the lessors in shares varying in number as to the several owners, and by the covenant in the deed of demise, the rent was reserved and made payable to the owners severally in proportion to their respective interests, the interests of the plaintiffs only in the shares owned by them being joint. In addition to the covenant on the part of the lessee for payment to each of the lessors of his separate proportion of the rent, there is a covenant by the lessee for the payment of the taxes and assessments which might become due upon the premises during the term, and a further covenant that he would, during the same time, "keep the said hotel with the messuages and appurtenances in like good order and condition as when he received the same, and would, at the expiration of the said term, surrender them in like good repair." On the 1st of January, 1847, the lessee, Coleman, as-

signed all his interest in the lease to Cornelius W. Blackwell, who entered and took possession of the premises. On the 17th of February, 1848, Blackwell, by deed poll, conveyed to the defendants, Bradley and Middleton, all the goods, chattels, household stuffs, and furniture then upon the premises, together with the good will of the said hotel and business, and the rest and residue of the unexpired term and lease of said Blackwell in the premises — upon trust to permit the said Blackwell to remain in possession and enjoyment of the property until he should fail to pay and satisfy certain notes and responsibilities specified in the instrument; but upon the failure of Blackwell to pay and satisfy those notes and responsibilities, the trustees were to take possession of the property conveyed to them, and to make sale thereof at public auction for the purposes in the deed specified. Blackwell remained in possession after the execution of the deed to the defendants, until the 6th of March, 1849, when he absconded, leaving a portion of the rent of the premises in arrear. The property having been thus abandoned by the tenant, an agreement was entered into between the owners of the property and the defendants, that 'a distress should not be levied for the rent in arrear, but that the defendants should sell the effects of Blackwell left upon the premises, and from the proceeds thereof should pay the rent up to the 1st day of May, 1849 — the defendants refusing to claim or accept any title to, or interest in, the unexpired portion of the lease, or to take possession of the demised premises. In this state of things the plaintiffs, being the largest shareholders in those premises, proceeded to take possession of and to occupy them, and to put upon them such repairs as by them were deemed necessary, and have continued to hold and occupy them up to the institution of this suit. The action was brought by the plaintiffs alone, and in their own names, to recover their proportion of the damages alleged by them to have been incurred by the breach of the covenant for repairs contained in the lease to Coleman, which was assigned to Blackwell, and by the latter to the defendants by the deed-poll of February 17th, 1848.

To the declaration of the plaintiffs the defendants pleaded four separate pleas. To the 3d and 4th of these pleas the defendants demurred, and as it was upon the questions of law raised by the demurrer to these pleas, that the judgment of the court was given, we deem it unnecessary to take notice of those on which issues of fact were taken. The 3d and 4th pleas present substantially the averments that the deed from Blackwell to the defendants was simply and properly a deed of trust made for the security of certain debts and liabilities of Blackwell, therein enumerated; and giving power to the defendants in the

event of the failure on the part of Blackwell to pay and satisfy those responsibilities, to take possession of the subjects of the trust and dispose of them for the purposes of the deed.    That this deed was not in law a full assignment of the term of Blackwell in the demised premises, and never was accepted as such, but on the contrary was always refused by the defendants as such; and that the plaintiffs, by their own acts, would have rendered an acceptance and occupation by the defendants, as assignees of the term, impracticable, if such had been their wish and intention, inasmuch as the plaintiffs themselves had, upon the absconding of Blackwell, the assignee of Coleman, entered upon and occupied the demised premises, and held and occupied the same up to the institution of this action, and had, during that occupancy, and of their own will, made such repairs upon the premises as to the plaintiffs has seemed proper or convenient.

Upon the pleadings in this cause two questions are presented for consideration; and comprising, as they do, the entire law of the case, its decision depends necessarily upon the answer to be given to those questions.

The first is, whether the plaintiffs in error, as parties to the deed of covenant on which they have declared, can maintain their action without joining with them as co-plaintiffs the other covenantees?

The second is, whether the defendants in error, in virtue of the legal effect and operation of the deed to them from Blackwell, the assignee of Coleman, and without having entered upon the premises in that deed mentioned, except in the mode and for the purposes in the 3d and 4th pleas of the defendants set forth, and admitted by the demurrer, were bound for the fulfilment of all the covenants in the lease to Coleman, as regular assignees would have been?

The affirmative of both these questions is insisted upon by the plaintiffs.

The converse as to both is asserted by the defendants, who contend as to the first, that the covenants for repairs declared on and of which profert is made, is essentially a joint contract, by and with all the covenantees, and could not be sued upon by them severally; and that the demurrer to the 3d and 4th pleas, reaching back to and affecting the first vice in the pleadings, shows upon the face of the declaration, and of the instrument set out *in hæc verba*, a restriction upon the plaintiffs to a joint interest, or a joint cause of action only with all their associates in the lease.

2. That the deed from Blackwell to the defendants, being a conveyance of a leasehold-interest in the nature of a trust for the security of a debt, by the terms of which conveyance the

grantor was to remain in possession till default of payment, and the grantees not having entered into possession of the demised premises, which were entered upon and held by the plaintiffs themselves, the defendants could not be bound, under the covenant, for repairs, to the premises never in their possession, and over which they exercised no control.

The second of the questions above mentioned, as presented by the pleadings, will be first adverted to. This question involves the much controverted and variously decided doctrine as to the responsibility of the mortgagee of leasehold property, pledged as security for a debt, but of which the mortgagee has never had possession, for the performance of all the covenants to the fulfilment whereof a regular assignee of the lease would be bound.

With regard to the law of England, as now settled, there seems to be no room for doubt that the assignee of a term although by way of mortgage or as a security for the payment of money, would be liable under all the covenants of the original lessee. In the case of Eaton *v.* Jacques, reported in the 2d vol. of Douglas, p. 456, this subject was treated by Lord Mansfield with his characteristic clearness and force; and with the strong support of Justices Willes, Ashurst, and Buller, he decided that the assignee of a lease by way of mortgage or as a mere security for money, and who had not possession, is not bound for or by the covenants of the lessee. The language of his lordship in this case is exceedingly clear. " In leases," said he, "the lessee, being a party to the original contract, continues always liable notwithstanding any assignment; the assignee is only liable in respect of his possession of the thing. He bears the burden while he enjoys the benefit, and no longer; and if the whole is not passed, if a day only is reserved, he is not liable. To do justice, it is necessary to understand things as they really are, and construe instruments according to the intent of the parties. What is the effect of this instrument between the parties? The lessor is a stranger to it. He shall not be injured, but he is not entitled to any benefit under it. Can we shut our eyes and say, it is an absolute conveyance? It was a mere security, and it was not, nor ever is meant that possession shall be taken until the default of payment and the money has been demanded. The legal forfeiture has only accrued six months, and if the mortgagee had wanted possession he could not have entered *via facti*. He must have brought an ejectment. This was the understanding of the parties, and is not contrary to any rule of law." The same doctrine was sanctioned in the case of Walker *v.* Reeves, to be found in a note in Douglas, vol. 2, p. 461. But by the more recent case of Williams *v.* Bosanquet, it has been decided that when a

50 *

party takes an assignment of a lease by way of mortgage as a security for money lent, the whole interest passes to him, and he becomes liable on the covenant for the payment of the rent, though he never occupied or became possessed in fact. This decision of Williams v. Bosanquet is founded on the interpretation put upon the language of Littleton in the fifty-ninth and sixty-sixth sections of the treatise on Tenures — in the former of which that writer remarks, "that it is to be understood that in a lease for years by deed or without deed, there needs no livery of seizin to be made to the lessee, but he may enter when he will, by force of the same lease;" and in the latter, "also if a man letteth land to another for term of years, albeit the lessor dieth before the lessee entereth into the tenements, yet he may enter into the same after the death of the lessor, because the lessee by force of the lease hath right presently to have the tenements according to the force of the lease." And the reason, says Lord Coke, in his commentary upon these sections is, "because the interest of the term doth pass and rest in the lessee before entry, and therefore the death of the lessor cannot divest that which was vested before." True it is, he says, "that to many purposes he is not tenant for years until he enter, as a release to him is not good to increase his estate before entry." Co. Litt. 46, b. Again it is said, by this commentator, that "a release which enures by way of enlarging an estate cannot work without possession; but by this is not to be understood that the lessee hath but a naked right, for then he could not grant it over; but seeing he hath *enteresse termini* before entry, he may grant it over, albeit for want of actual possession he is not capable of a release to enlarge his estate." Whatever these positions and the qualifications accompanying them may by different minds be thought to import, it is manifest, from the reasoning and the references of the court in the case of Williams v. Bosanquet, that from them have been deduced the doctrine ruled in that case, and which must be regarded as the settled law of the English courts, with respect to the liabilities of assignees of leasehold estates. But clearly as this doctrine may have been established in England, it is very far from having received the uniform sanction of the several courts of this country, nor are we aware that it has been announced as the settled law by this court. Professor Greenleaf, in his edition of Cruise, Title 15, Mortgage, § 15, 16, p. 111, inclines very decidedly to the doctrine in Eaton v. Jacques. After citing the cases of Jackson v. Willard, 4 Johns. 41; of White v. Bond, 16 Mass. 400; Waters v. Stewart, 1 Caines's Cases, 47; Cushing v. Hurd, 4 Pick. 253, ruling the doctrine that a mortgagee out of possession has no interest which can be sold under execution, but that the equity of

redemption remaining in the mortgagor is real estate, which may be extended or sold for his debts; and farther, that the mortgagee derives no profit from the land until actual entry or other exertion of exclusive ownership, previous to which the mortgagor takes the rents and profits without liability to account, Mr. Greenleaf comes to the following conclusion, namely, " On these grounds it has been held here as the better opinion, that the mortgagee of a term of years, who has not taken possession, has not all the legal right, title, and interest of the mortgagor, and therefore is not to be treated as a complete assignee so as to be chargeable on the real covenants of the assignor."

In the case of Astor *v.* Hoyt, reported in the 5th of Wendell, 603, decided after the case of Williams *v.* Bosanquet, and in which the latter case was considered and commented upon, the Supreme Court of New York, upon the principle that the mortgagor is the owner of the property mortgaged against all the world, subject only to the lien of the mortgagee, declare the law to be, "that a mortgagee of a term not in possession, cannot be considered as an assignee, but if he takes possession of the mortgaged premises he has the estate, *cum onere.* In the case of Walton *v.* Cronly's Administrator, in the 14th of Wendell, p. 63, upon the same interpretation of the rights of the mortgagor which was given in the former case, it was ruled that a mortgagee who has not taken possession of the demised premises, is not liable for rent, and that the law in this respect is in New York different from what it is in England. It is contended, on behalf of the plaintiff in error, that the doctrine in Eaton *v.* Jacques, and in the several decisions from the State courts in conformity therewith, is inconsistent with that laid down by this court in the cases of Stelle *v.* Carroll, in the 12th of Peters, 201, and of Van Ness *v.* Hyatt et al. in the 13th of Peters, 294. With regard to this position it may be remarked, that the questions brought directly to the view of the court, and regularly and necessarily passed upon in these cases, did not relate to the rights and responsibilities of the assignee of a term, or to what it was requisite should be done for the completion of the one or the other. Giving every just latitude to these decisions, all that can be said to have been ruled by the former is, that by the common law a wife is not dowable of an equity of redemption, and by the latter, that an equitable interest cannot be levied upon by an execution at law. This court therefore cannot properly be understood as having, in the cases of Stelle *v.* Carroll and Van Ness *v.* Hyatt, established any principle which is conclusive upon the grounds of defence set up by the third and fourth pleas of the defendants. Nor do we feel called upon, in the present case, to settle that principle; for let it be supposed that such a principle has

been most explicitly ruled by this court, still that supposition leaves open the inquiry, how far the establishment of such a principle can avail the plaintiffs in the relation in which they stand to the other covenantees in the deed from Coleman. In other words, whether the covenant for repairs, contained in that deed, was not essentially a joint covenant; one in which the interest was joint as to all the grantees, and with respect to which, therefore, no one of them, or other portion less than the whole, could maintain an action?

The doctrines upon the subjects of joint and several interests under a deed, and of the necessity or propriety for conformity with remedies for enforcing those interests to the nature of the interests themselves, have been maintained by a course of decision as unbroken and perspicuous, perhaps, as those upon which any other rule or principle can be shown to rest. They will be found to be the doctrines of reason and common sense.

Beginning with Windham's case, 3d Reports, part 5th, 6 a, 6 b, it is said that joint words will be taken respectively and severally, 1st. With respect to the several interests of the grantors. 2d. In respect of the several interests of the grantees. 3d. In respect to, that the grant cannot take effect but at several times. 4th. In respect to the incapacity and impossibility of the grantees to take jointly. 5th. In respect of the cause of the grant or *ratione subjectæ materiæ.* The next case which we will notice, is Slingsby's case in the same volume, 18 a, 18 b, decided in the exchequer. In this case it was ruled that a covenant with several *et cum qualibet* and *qualibet eorum,* is a several covenant only where there are several interests. Where the interest is joint the words *cum quolibet et qualibet eorum* are void, and the covenant is joint. In the case of Eccleston and Wife *v.* Clipsham, the law is stated, that although a covenant be joint and several in the terms of it, yet if the interest and cause of action be joint, the action must be brought by all the covenantees. And on the other hand, if the interest and cause of action be several, the action may be brought by one only. 1 Saunders, 153. The learned annotator upon Sir Edmund Saunders, in his note to the case of Eccleston *v.* Clipsham has collected a number of cases to this point and others which go to show that where there are several joint covenantees, and one of them shall sue alone without averring that the others are dead, the defendant may take advantage of the variance at the trial, and that the principle applicable to such a case is different from that which prevails where the action is brought against one of several joint covenantors or obligors who can avail themselves of the irregularity by plea in abatement only. The same rule with regard to the construction of covenants and to the legal rights and

position of the parties thereto in courts of law may be seen in the cases of Anderson *v.* Martindale, 1 East, 497; Withers *v.* Bircham, 3 Barn. & Cress. 255; James *v.* Emery, 5 Price, 533.

It remains now to be ascertained how far the parties to the case before us come within the influence of principles so clearly defined, and so uniformly maintained in the construction of covenants and in settling the legal consequences flowing from that interpretation. The instrument on which the plaintiffs instituted their suit was a lease from the plaintiffs and various other persons interested in different proportions in the property demised, and by the terms of which lease rent was reserved and made payable to the several owners of the premises in the proportion of their respective interests. So far as the reservation and payment of rent to the covenantees, according to their several interests, made a part of the lease, the contract was several, and each of the covenantees could sue separately for his portion of the rent expressly reserved to him. But in this same lease there is a covenant between the proprietors and the lessee, that the latter shall keep the premises in good and tenantable repair, and shall return the same to those proprietors in the like condition, and it is upon this covenant or for the breach thereof that the action of the plaintiffs has been brought. Is this a joint or several covenant? It has been contended that it is not joint, because its stipulations are with the several covenantees jointly and severally. But the answer to this position is this: Are not all the covenantees interested in the preservation of the property demised, and is any one or a greater portion of them exclusively and separately interested in its preservation? And would not the dilapidation or destruction of that property inevitably affect and impair the interests of all, however it might and necessarily would so affect them in unequal amounts?

It would seem difficult to imagine a condition of parties from which an instance of joint interests could stand out in more prominent relief. This conclusion, so obvious upon the authority of reason, is sustained by express adjudications upon covenants essentially the same with that on which the plaintiffs in this case have sued.

The case of Foley *v.* Addenbrooke, 4 Adolph & Ell. 197. The declaration in covenant stated, that Foley and Whitby had demised to Addenbrooke lands and iron mines of one undivided moiety, of which Foley was seised in fee, Addenbrooke covenanting with Foley and Whitby and their heirs to erect and work furnaces and to repair the premises and work the mines; that Foley was dead, and plaintiff, Foley's heir, and breaches were assigned as committed since the death of Foley; that

Addenbrooke, and since his death his executors. had not worked the mines effectually, nor repaired the premises, nor left them in repair. To this declaration it was pleaded, that Whitby, one of the tenants in common, and one of the covenantees, who was not joined in the action, still survived. This plea was sustained upon special demurrer, and Lord Denman, in delivering the opinion of the court, says: " In the present case the covenants for breach, of which the action is brought, are such as to give to the covenantees a joint interest in the performance of them ; and the terms of the indenture are such that it seems clear that the covenantees might have maintained a joint action for the breach of any of them. Upon this point the case of Kitchen *v.* Buckley, 1 Lev. 109, is a clear authority ; and the case of Petrie *v.* Bury, 3 Barn. & Cress. 353, shows that if the covenantees could sue jointly, they are bound to do so."

The case of Bradburne *v.* Botfield, in the Exchequer, reported in the 14th of Meeson & Welsby, was an action of covenant upon a lease by seven different lessors jointly, according to their several rights and interests in certain coal mines, to the defendant, yielding and paying certain rents to the lessors respectively, and to their respective heirs and assigns, according to their several and respective estates, rights, and interests in the premises ; and the defendant covenanted with all the above parties and with each and every of them, their and each and every of their heirs, executors, administrators, and assigns, to repair the premises, and to surrender them in good repair to the lessors, their heirs and assigns respectively at the end of the term. The declaration then deduced to the plaintiff a title to the moiety of one of the lessors, and alleged as breaches the non-repair of the premises and the improper working of the mines. To this declaration it was pleaded, that one of the original lessors, who had survived all the other covenantees, was still living. It was held, upon demurrer, that the covenants for repairs and for working the mines were in their nature joint and not several, and that the surviving covenantee ought to have brought the action. Baron Parke, who delivered the opinion of the court, thus speaks : " We have looked, since the argument, into the lease now set out on oyer, and into all the authorities cited for the plaintiff, and are still of opinion that he cannot recover upon the covenants stated in the declaration. It is impossible to strike out the name of any covenantee, and all the covenantees must therefore necessarily sue upon some covenant; and there appear to us to be no covenants in the lease which are of a joint nature, if those declared upon are not, or which would be in gross, if the persons entitled to the legal estate had alone demised ; for all relate to and affect the quality of the subject of the demise, or to the mode of enjoying of it."

We regard the cases just cited as directly in point, and as conclusive against the claim of the plaintiffs to maintain an action upon the covenant for repairs in the lease to Coleman, apart from and independently of the other covenantees in that lease jointly and inseparably interested in that covenant with the plaintiffs. We therefore approve the judgment of the Circuit Court, that the plaintiffs take nothing by their writ and declaration, but that the defendants recover against them their costs about their defence sustained, as by the said court was adjudged; and we order the said judgment of the Circuit Court to be affirmed.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the district of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause, be and the same is hereby affirmed, with costs.