Mr. Justice Hagner
delivered the opinion of the Court:
On April 24, 1886, a suit was brought in the name of the United States, for the use of Mary Ann McCarthy (born Ready), and Edward Charles Ready against James H. O’Leary and others, upon a guardian’s bond, executed May 4, 1872, by John Bligh, with Dennis O’Connell and Dennis O’Leary, the ancestors of the defendants, as the sureties. The bond was in the penalty of $6,000, and its condition was that John Bligh, appointed by the Orphans’ Court of the District of Columbia guardian to Mary Ann Ready, born July 25, 1858, and Edward Charles Ready, born July 22, 1859, orphans of James Ready, should faithfully account to that court, as directed by law, for the management of the property and estate of said orphans and deliver up the said property agreeably to the order of said court or the directions of law, and in all respects perform the duty of guardian to said orphans according to law.
The breach averred in the declaration was that the said Bligh, between the said 4th day of May and the 30th day of September, 1872, had received for and on account of his said wards, for whose use the suit was brought, sums of money amounting to $3,055.59 ; and that afterwards, to wit, on the 24th of July, 1879, and the 21st of July, 1880, the said Mary Ann Ready, now McCarthy, and the said Edward Charles Ready, respectively, arrived at the full age of' twenty-one years, and were then entitled to receive of the said John Bligh, as their guardian, the aforesaid sum of *124 •$3,055.59, so as aforesaid received, “yet the said John Bligh, although often requested so to do, hath not yet paid the same, or any part thereof, to the said Mary Ann Ready, now McCarthy, and Edward Charles Ready, or either of them, but has therein wholly failed and made default.”
The defendant interposed nine pleas, two of them being the plea of the Statute of Limitations. The bond having been executed in 1872, was above twelve years’ standing in 1886, when the action was brought.
The Maryland Statute of 1729, Ch. 23, Section 21, in force here, provides that, “all actions upon administration and testamentary bonds shall be commenced within twelve years after the passing of said bonds, and hot afterwards,” and Section 22 declares that nothing in the act shall be construed to bar any persons within the age of twenty-one years from bringing such action within six years of their 'Coming of age, &c. This provision, by the Act of 1798, Ch. 101, Subch. 12, Sec. 4, is made applicable to guardians’ bonds.
In the case of the oldest of the two infants, the six years •after her attaining her majority had expired at the time of the bringing of this suit; but with respect to the younger ward only five years and seven months had elapsed after his majority, when the suit was instituted. Demurrers were interposed by the plaintiff to these pleas, and leave given to amend the declaration. The amended declaration differed from the first in that it contained the additional averments that in March, 1882, the account of Bligh, as guardian of the two wards, was stated by the Register of Wills, and there was found to be due, and in his hands, $2,430.37; .$1,215.19, part thereof, was distributed to the plaintiff, Mary Ann Ready, now McCarthy, and $1,215.18, part thereof, was distributed to the said Edward Charles Ready, ■and that afterwards, and before this suit was brought on appeal to the Supreme Court of this District, these proceedings were confirmed, and the guardian was ordered to pay the said sums to the children, respectively.
*125 To the amended declaration the defendants demurred the demurrer was overruled, and the plaintiff dismissed the suit as to Mary Ann McCarthy.
Nine pleas were again interposed, two of them of the Statute of Limitations. Issue was joined and the case went to trial.
1. The first exception appearing in the record was taken when the plaintiff offered to read to the jury a copy of the guardian’s bond, to which the counsel for the defendant objected on the ground, first, “that as this was in form a joint action by two equitable plaintiffs, as to one of whom, viz., Mary Ann Ready, now McCarthy, the action was barred by the Statute of Limitations, and the same, as to her, having been discontinued, the other plaintiff, Edward Charles Ready, could not recover; and, secondly, that the suit as to Edward Charles Ready, the remaining equitable •plaintiff, was barred by limitations, because a new or several cause of action -was stated for the first time in the amended declaration, filed the 21st day of February, 1887A The court sustained the objection and refused to allow the bond to be given in evidence to the j ury.
The question presented under this ruling is, whether the suit upon the amended declaration could be maintained in behalf of Edward Charles Ready alone, after the plaintiff had entered a non pros, as to Mary Ann McCarthy ? The contention of the defendants is that the bond is to be construed as a joint covenant, in such sense that only a joint action in behalf of all those who were originally interested could be maintained upon it.
The case of Calvert vs. Bradley, 16 How., 596, was referred to as sustaining this contention. The facts there were altogether different from those in the present case. There the two plaintiffs, with several others interested in different proportions in the National Hotel, leased the property for an amount of rent payable to the proprietors in different sums proportionate to their several interests. The lessee *126 assigned and the assignee conveyed the furniture in the hotel to the defendants as trustees. Two of the largest proprietors brought suit to recover upon a covenant which had been made by the lessee, with all the lessors, to maintain and return the premises in good repair, and' because this covenant in terms was made with all the lessors jointly, the court held that no action could be 'maintained for its breach except by all the lessors. ■
But the court in that case expressly recognized the fight of each lessor to maintain a separate action upon another covenant in the lease, by which the lessee bound himself to pay to each lessor severally, the particular part of the rent secured to him in proportion to his interest in the property. “ So far,” said the court, “ as the reservation and payment of rent to the covenantees according to their several interests, made a part of the lease, the contract was several( and each of the covenantees could sue separately for his portion of the rent expressly reserved to him.”
The obligation of the guardian, in the case before us, was to account faithfully for the property of each ward severally, and to deliver up the several shares to each ward, and in all respects to perform his duty as guardian of each ward respectively; resembling in this particular the several covenants referred to by the court in 16 Howard. The same distinction was taken in the other cases cited in that decision. In each case a number of persons being -named as joint obligees, it was held that less than the whole number (except where disabilty as to the others were shown) could not maintain the action. But such is not the case here. The only obligee here is the United States, and it stands as the legal plaintiff. The amendment made no change in the plaintiff; it only, struck out the name of one of the persons who, in the first declaration was stated to be interested in the recovery. By statutory provisions persons interested are authorized to use the name of the Government, the obligee in certain public bonds; and no one can do so *127 without such authorization. The entry of the use during the progress of the case in a form different from that expressed when the suit was commenced, is immaterial. This is very well shown in State .of Maryland for the use of Justices of the Levy Court of Baltimore .County vs.. Dorsey, 3 Gill and Johnson, 92. This was a suit.on a tax-collector’s bond to recover moneys .received by the principal in the bond, in virtue of his office. Pleas interposed by . the defendants, sureties in the bond, averred that after the commencement of the suit, a body politic and corporate by the name and style of the Commissioners of Baltimore County was duly created and established; that the individuals comprising the same were duly elected such commissioners, and the body described as the justices of the Levy Court of Baltimore County, for whose use the action was instituted had ceased to exist, and no successors had been appointed to the said court hitherto; and therefore the action could no'longer be maintained.
The Court of Appeals in overruling this objection, says (p. 92):
“The suit being brought in the name of the State, and entered for the use of the Levy Court, of Baltimore County, the demurrers to the third and fourth pleas present substantially but one and the same question; which is, whether the Levy Court of Baltimore County, having become extinct, and another body politic and corporate created in its place since the bringing of the suit, the action can be maintained. When a.suit is brought on a private bond, etc., for the use of an individual, the individual for whose use it is entered is not the legal plaintiff; the use is only entered for the protection of his equitable interest, and if dies pending the suit, his death is not the subject of a plea, nor is there for the purpose of the suit any necessity for suggesting his death, but the suit goes on as if he was still living, or the use had never been entered. The judgment is rendered in the name of the nominal, the legal plaintiff; and *128 it is nothing to the defendant who may be entitled to the-equitable interest. And we can perceive no reason why in the case of a public bond, with the privilege secured to any person interested to bring suit upon it, there should be any difference. In either case the suit must be brought in the name of the obligee. In the case of a private bond, the individual obligee is the legal plaintiff for the use of the person having the equitable interest; and in the case of a bond to the State (as here), the State is the legal plaintiff; and there is no necessity for the purposes of the suit, to-enter the use, whether it is brought for the benefit of an individual or a corporation; nor if entered, does it make any difference to the defendant how it may vary or change as to the person asserting the same right. It does not affect his defense, nor can any change of the use become a fit subject of plea. The declaration or replication in the case of a bond with collateral condition, as this is, assigns the breach and discloses the use, or for what purpose the suit is brought, and the defendant being thus advised shapes his defense accordingly. The judgment is in the name of the-State, and will be for the use of whoever is entitled to the beneficial interest.”
This reasoning is applicable to the facts of the present case. As the declaration set forth the names of the persons who claimed to be interested in the penalty of the bond, it was really not necessary the suit should have been formally entered for their use; and the change in the names of the uses, by omitting one name, could make no difference to the defendants. If this were held to be a joint bond, so that all persons interested must be joined in the same suit brought to enforce its penalty, consequences would result most injurious to innocent persons intended to be secured by such instruments.
A guardian appointed for a number of children may give one bond, as is uniformly done in this jurisdiction. The eldest of the children may be paid off in full; another *129 may have died, and his representative alone could maintain an action in respect to that interest. Others of the wards may be unwilling to sue the guardian; one may have become his wife, and therefore would be disqualified to sue him. But it would be most unjust that the other wards should be deprived of their right to claim the benefit of the bond intended for their protection, simply because other beneficiaries are disabled or disinclined to sue, or may have no cause of action. In no sense of the word is the interest of the wards in this bond a joint interest — neither can claim for himself the $6,000, the entire penalty of the bond. Each has an interest several to himself, which may differ from that of every other.
We have seen that by the testamentary act a guardian’s bond is placed in all respects upon a footing with the bonds of executors and administrators. Decisions in suits upon %e latter class of bonds are, therefore, authority in actions upon guardians’ bonds. In Maddox vs. State, 4 Harris and Johnson, 539, it was decided that the verdict of the jury (in a suit on an executor’s bond) may be rendered according to the facts disclosed by the proof as to the number of distributees shown to be interested in the suit. In that case suit was brought in the name of the State for the use of seven persons claiming as distributees. The testator left his estate to be divided equally between his brother and the children of a deceased brother, who were alleged in the declaration to be six in number. In the progress of the trial, testimony was adduced by the defendants .to show there were only five children, and that the brother had been paid off in full. The court below refused to instruct the jury that if it appeared there were only five children, or that the brother had been settled with by the executor, then there could be no recovery at all. Under the instruction given by the court, the jury found there were six children of the deceased brother who were each entitled to one-sixth of the estate; but that the brother had been paid off; *130 and as to him, the verdict was for the defendant. The rulings were affirmed on appeal.
No such strictness can be imported into this class of cases as obtains in suits upon covenants plainly joint. It has been held in Maryland that a suit can be maintained upon a guardian’s bond against one surety without suing the principal. State vs. Lovett, 5 G. & J.; and this is so in this jurisdiction, under our rules.
We are clearly of the opinion that the ruling stated in this exception is erroneous.
2. After the evidence given in the first exception the plaintiff offered in evidence the account of John Bligh, as guardian, showing a balance of $2,430.37 due to his wards; $1,215.19 to Mary Ann McCarthy, and $1,215.17, due to Edward Charles Ready ; and also an order of the Orphans’ Court requiring him to pay the balance due, which was served upon the defendant; it was also shown that Dennis O’Leary, one of the sureties on the bond, had died before the commencement of this suit, leaving sufficient real estate in the hands of his heirs to pay said claim. The defendants made no objection to these offers, and conceded that the witnesses tendered would prove the matters alleged. But the court of its own motion, ihstructed the jury that the cause of action now presented was for the first time stated in the amended declaration; that the equitable plaintiff, Edward Charles Ready, was barred by limitations and could not recover in this action; and that their verdict should be for the defendants. This ruling raises the question whether the chango in the declaration constituted a new action, so that the plea of the statute, interposed to the amended narr., would be a bar to the claim of Edward Charles Ready. The plea was no bar when the action was commenced, as six years had not elapsed at that time after he had attained his majority. But the statute would be a flat bar to his recovery if the amendment were to be held as constituting a new action.
*131 The changes in the amended declaration are, first, the insertion of the paragraphs setting forth the proceedings in the Orphans’ Court against the guardian. These amendments were unnecessary, upon the authority of Jarrett vs. The State, 5 G & J., 28. Usually in suits upon official bonds the breaches are not set forth in the declaration, which brefly recites the bond, and avers that the obligees did not perform the specified duty. To this the defendant pleads general performance; and the replication then sets forth the breaches relied on. In the >present case the breaches were averred in the declaration. If these specifications had not been set forth until the replication, it could not be successfully contended that a new cause of action had been begun by the filing of the replication. But there is no new matter contained in the amended declaration except a needless statement of the supposed evidence in the case, and its insertion, though irregular, could not convert the new declaration into the impetration of a new cause of notion.
The next change in the declaration is the order to withdraw the entry to the use of Mrs. Mary McCarthy. The mere change in the names of the persons for whose use the suit had originally been entered, could not have the effect of stating a new action. The plaintiff, the United States, remains unchanged. The same bond remains as the subject of the suit. That one whose name had been first noted in the title as an interested party had been omitted at a subsequent stage of the case, could work no injury to the defendants. They would only thereby be discharged from liability in that action to the person whose name has been thus dropped.
In Johnson vs. District of Columbia, 1 Mackey, 427, the original declaration stated no cause of action, and none was set forth until the amendment was made. The declaration in the case at bar stated originally a good cause of action, and all that could have been objected was that it was *132 defectively stated. The amendment, therefore, would not-admit the application of the statute if the claim was not. barred when the suit was commenced. The difference between the cases is, that in Johnson’s case there was a statement of a bad cause of action; and in the present, only a defective statement of a good cause of action.
3. The defendants next insisted that as the plea of the Statute of Limitations was interposed to the claims of both the wards when the suit was brought, and was at the time-applicable to one of them, the judgment under the plea must be against the claims of both. This is not claimed because the plea really applies to both, but because of a technical rule to that effect, which it is insisted was laid down in the case of Marstellar vs. McLean, 7 Cranch, 156. That was a joint action quare clausum Jregit by parceners or tenants in common, which distinguishes it from the case at bar, which we have s§en cannot be called a joint action. The defendants pleaded the Statute of Limitations; and the-plaintiff' replied that certain of their number were under a disability to sue, which would sufficiently reply to the plea as to those plaintiffs, while as to another plaintiff no such excuse was set forth, and the court held the plea would avail unless all the plaintiffs were under disability. That suit was brought in the name of all the plaintiffs, and they all continued to be parties plaintiffs throughout the action. But here the suit was brought by the United States, and when the decision was made as to the plea to the amended declaration, only one of the persons originally indorsed as cestuis que use remained connected with the case at all; and if that person could be viewed as a plaintiff, he was the only person occupying that position, aud his reply to the plea was not embarassod by the predicament of any other person.
Chief Justice Marshall, twenty years after Marstellar vs. McLean, explained that decision in 2 Brokenborough, Doe ex dem Lewis vs. Barksdale, 441, which was an action of ejectment by several heirs at law. Join t and several demises *133 from the heirs and their vendees, the lessors of the plaintiffs, were laid in the declaration. The defendants relied upon adverse possession of more than twenty years. The plaintiffs set up the provisions of the Virginia statute, which gave to a claimant who was under age before the commencement of the suit, or beyond the commonwealth, or non compos, Jemme covert, etc., at the time the right of entry accrued, ten years in which to bring his action, after the removal of such disability. It appéared that six of the lessors were out of the commonwealth when the cause of action accrued, aiid so continued until the commencement of the suit. As to the others, no defense under the proviso could be shown. The court held the six thus circumstanced had the right to recover, although as to the others the defense of twenty years possession was a flat bar. The case at first seemed to be within Marstellar vs. McLean, but the chief justice points out the distinction :
“ Had the lessors of the plaintiff been seized of the same property, and been placed under precisely the same circumstances in every other respect, no doubt could exist in the case. On December 25, 1806, when the cause of action accrued, Mary Lewis, now Mary Russell, was an infant residing within the Commonwealth of Virginia, and came within that exception of the statute only which saves the rights of .infants. Pending this disability she removed out of the country, and has continued out of it until the institution of this suit. But it is admitted that one disability cannot be tacked to another, and consequently, the right of this party is the same as if she had remained within the State. The •statute preserves her right of action for ten years after she has attained her age of twenty-one years. That time having expired she would be no longer within its saving. The other six plaintiffs were out of the commonwealth when the cause of action accrued, and ha,ve continued out of it until the institution of this suit. Consequently, they are not barred by the act. If, then, the plaintiffs claimed in severatly *134 it would be clear that six of them would be entitled to recover, and the defendant would retain the seventh part of Mary Russell.”
“If this was an original question, I should feel much difficulty in so construing the first and second sections of our act of limitations as to exclude one co-heir from the exception in his favor, in consequence of the omission of another to assert his right within the time to which it is limited. The proviso of the act appears to be in favor of each individual who comes within it. It is personal. It applies to him who labors under the disability. It is made ■ in consequence of that disability and, it seems to me, that the intention of the act would be defeated by a construction ■which denies the benefit of the saving to an individual coming within its words, or would give the benefit to an individual not coming within them.”
That'is precisely the case here. This provision in our statute is a personal one, made for the benefit of the party under the disability; and it would be most unjust to hold because three or four of a number of wards had allowed the six years to pass, without bringing suit, or should determine for some reason not to sue, that those who do wish to sue, and are entitled to do so, should lose the benefit of this personal provision made for their benefit. The Chief Justice proceeds:
“The counsel for the defendant contends that the lessors-of the plaintiff constitute but one heir, and that as one of' them is barred by the Act of Limitations, all are barred. As one of them cannot be brought within the savings of the act, those who do come within cannot avail themselves, of the exception in their favor.
“ It has already been said that this construction would defeat the obvious intention of the act. A person, whose right is expressly saved for his own benefit, would be deprived of that right by the negligence of another, over whom he had no control. One of the coparceners might *135 have been of full age when the cause of action accrued, so that as to him, the time would run from the entiy of the defendant. The exception then in favor of the parties in whose favor the exceptions are made, would be of no avail. This construction would certainly defeat the intention of the law. * * * The technical rule, in Marsteller vs. McClean, does not apply to this case.”
In accordance with this ruling the verdict was in favor of those co-heirs who were under the disability, and against the others.
4. Lastly, it is insisted that the plea of the statute should prevail, because the plaintiff in behalf of Ready did not specially rely on the saving of the six years in the declaration. But if this were essential the declaration in this case states expressly when Ready was horn ; and thus showed on its face, as satisfactorily as any averment could have done, that the six years had not elapsed after his arriving at age, before the impetration of the original writ in the case.

The judgment belotu is reversed.and a nciu trial ordered.