**HUMBLE OIL & REFINING CO. v. CAMPBELL.**

**CAMPBELL v. HUMBLE OIL & REFINING CO. et al.**

**BUNKER et al. v. CAMPBELL.**

**No. 7131.**

Circuit Court of Appeals, Fifth Circuit.

March 3, 1934.

Rehearing Denied April 12, 1934.

R. M. Rowland and Sam R. Sayers, both of Fort Worth, Tex., and G. P. Dougherty, of Houston, Tex., for appellants.

Stanley Boykin, H. C. Ray, T. P. Perkins, Arthur A. Diehl, and W. L. Dean, all of Fort Worth, Tex., for appellee Geo. H. Campbell.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was by bill in equity to charge Humble Oil & Refining Company, Bunker and wife, and Greene and wife, as trustees, and to recover from them, as the property of the trust, moneys the Humble Oil & Refining Company had paid the Bunkers and the Greenes. As to Bunker and his wife, the former Harriette Thiell, and as to Greene, it was charged that they were trustees of certain oil properties, and that in violation of this trust they had conveyed some of them to themselves. That in further violation they had, with the cooperation of the Humble Oil & Refining Company, converted to their own use large sums of money belonging to the trust. As to the Humble Oil & Refining Company, the charge was that, knowing they were dealing with unfaithful trustees, who were appropriating to their own use property and moneys of the trust, they had paid over to them large sums of money without disclosing to the beneficiaries that they had done so, thus co-operating with them in concealing the spoliation from the beneficiaries. Specifically it was alleged that through one of his printing companies, as nominal trustee, Bunker had, in connection with an advertising scheme, issued and sold about 6,500 certificates of interest, in units of $\frac{1}{10,000}$ each, in something over 10,000 acres of purported oil properties, which from time to time he had acquired, representing that the properties would be developed for, and all proceeds from them would be paid over to the unit holders. That in addition to these he had issued some in units of $\frac{1}{250}$ each. That having undertaken the development of the property through one Frank Greene and gotten a well drilled, he had caused to be conveyed to Greene 40 acres, and to himself and Harriette Thiell 40 acres adjoining the well, and then had conveyed to the Humble Oil & Refining Company 2,700 acres, including the two 40-acre tracts and the well. It was alleged that of the proceeds, though all should have gone to the unit holders, $75,000 was paid to Bunker and Thiell, and $75,000 to Greene on account of the 40-acre tracts each had gotten from the trust property, and there was later paid to them out of the oil runs $33,544.18 to Greene, $33,544.18 to Bunker and Thiell. It was alleged that the company of which plaintiff was receiver had been formed to receive and had received in trust for them and was the owner of all the rights and interest of the beneficiaries, the stockholders. Certain of the unit holders, stockholders now in the corporation, appearing for themselves and others similarly interested, intervened affirming the receiver's right to sue on behalf of the corporation and themselves as stockholders and original beneficiaries of the trust.

Bunker and Thiell answered denying breach of trust, and asserting that what they had done was within the scope of the trust agreement and their powers under it. Greene and wife denied that they had acted in fraud or bad faith, denied that they had taken their 40 acres with knowledge of the trust, asserted that Greene was a purchaser in good faith and for value, and also pleaded limitation and laches. The Humble Company denied having had any knowledge of the trust, asserted that it acted throughout in good faith, and pleaded limitation and laches. In limine, however, all of the defendants moved to dismiss on the ground that the receiver had no title to sue because the company had never obtained any, and that the interventions could give him none. Referred to a master to hear, take testimony, and report, the case was thoroughly developed before him. He filed a lengthy report, setting out his findings of fact and conclusions of law, which, very briefly, were that the World Oil Company, for whom plaintiff sued as receiver, had succeeded to and was the owner of all the rights of action of the unit and certificate holders. That by reason of its complete and entire control and management by Bunker, from the date of its organization until it went into the hands of a receiver, the company and its stockholders, the unit holders, had been kept in ignorance of its and their rights. He found that, though rather vaguely described in the certificates, as between Bunker and Thiell, the active managers of the trust and its beneficiaries, there never was any question but that the oil rights in 10,000 acres of the property Bunker had gotten together in Crockett county belonged to these holders, nor any that the 40 acres adjoining the well, which Bunker caused to be conveyed to himself and Miss Thiell, was a part of this 10,000 acres. That beyond any question the conveyance of this 40 acres was a direct and deliberate fraud upon the trust. He found, as to Greene, that, though he was not a trustee nor charged with knowledge of the trust so as to make the conveyance of the 40 acres to him a fraud on the beneficiaries, or him other than a purchaser of it in good faith, the conveyance to him failed because not for a valuable consideration, it having been made to him in payment of a past-due debt. He recommended judgment against Bunker for all of the funds diverted, and against Greene for $75,000 cash

669

and $33,544.18 oil runs, less $1,700, the debt due him.

As to the Humble Company, he found that they knew enough of the facts to put them on notice of the rest, and to fully charge them in law with knowledge of the existence of the trust, of its terms, and of the breach of it by Bunker. That with that knowledge it had expressly agreed in the contract of sale to, and did, pay over to Bunker and Greene thereon moneys which it knew in law belonged to their beneficiaries. He found further that, while the Humble Company did not actively engage in defrauding the beneficiaries in order to reap a direct benefit for itself, it yet, in order to procure the property which it was desirous of obtaining and developing, did co-operate with Bunker in diversions, and did become a participant in the fraud, by making the original wrongful payments to Bunker, Thiell, and Greene, and the subsequent wrongful payments to them, out of the oil runs, without advising the beneficiaries of what was being done, though they knew that the fraudulent spoliation was going on. He found, then, that it would be inequitable to charge the defrauded ones with laches, or permit limitation to run against them while still ignorant of the fraud. He recommended judgment against the Humble Oil Company for $150,000 cash it had paid to Bunker, Thiell, and Greene, and for $67,088 paid them out of oil runs, less $1,700 the amount due Greene for his wages, which the plaintiff had tendered him as a proper equitable set-off.

The District Judge, on exceptions to the findings of the master, affirmed them all with unsubstantial changes, except those as to Greene's status as an innocent purchaser in good faith and for value. He found that Greene was innocent of fraud or wrongdoing in regard to the transfer of the 40 acres, and that his purchase of it, being fair and for a present consideration, should stand. He therefore declined to follow the master's recommendation for judgment against Greene and the Humble Company for the $75,000 cash Greene got. As to the oil runs paid to Greene, however, he found as the master had done, that they were unlawfully diverted from the trust by Greene with knowledge that they were the property of the trust, and with equal knowledge that he had no right to them. On the same ground he affirmed the master's findings charging the Humble Oil Company with their wrongful payment.

All parties appeal from the decree. The Humble Company attacks it on the ground that the evidence shows it had no knowledge of the trust, especially no knowledge that the moneys would be misappropriated by the trustee, and that, if it did have such knowledge, it was only a constructive trustee in whose favor limitation has been running since the payment. The receiver contests the decree on the ground that the master, not the judge, was right in appraising the situation as to Greene. The Greenes and the Bunkers each urge that owning their 40 acre tracts each had the right to sell to the Humble, and that each had a right to the oil runs, though they came out of the well on lands belonging to the trust.

 The briefs are as voluminous as the record. The District Judge's findings, adopting and modifying those of the master, went to one hundred findings of fact and thirteen conclusions of law. All told, there are eight hundred pages of briefs. In the multitude of counsel however, there is wisdom and out of the more than fifteen hundred pages of record, briefs, findings, and opinion we think the case comes at last within very simple compass, controlled by equitable considerations of the plainest kind. In their light, apparent difficulties disappear. All of the contentions as to the sufficiency of the descriptions, all of the technical niceties of the arguments over whether the corporation formed by Bunker could sue Bunker for injuries done to those who accepted Bunker's arrangements induced by his fraud, by taking stock in the new company, come to nothing. All of the difficulties growing out of the question of the extent to which the Humble may be charged with knowledge of the trust and the misappropriation of the purchase money and those arising out of the contention so strongly urged by the Humble Company that limitation and laches apply because, being without fraud, it was at most a mere constructive trustee, disappear. Simply stated, this is the case: On flamboyant promises issued to catch money Bunker obtained moneys under circumstances which clearly charged the properties acquired by him with a trust, and him as trustee, with the utmost good faith to the beneficiaries in the administration and disposition of them. As between him and them in a suit to account, equity does not disturb itself with nice calculations of whether the terms of the trust were sufficiently specific in description to identify a particular 10,000 acres out of the 12,000 he acquired. His own actions made identification complete. When he seized for himself 40 acres immediately adjacent to the

well being drilled in accordance with his promise to develop, he seized that which he had already established as trust property by locating the well there. After and by that location he had supplied any deficiencies of outline which might have theretofore been lacking, and efficiently prevented himself from taking property anywhere near the well, except in breach of his trust. As to Bunker, it is not even arguable that his effort to take the 40 acres was effective. It stands confessed that he held it after the deed was made, just as he had done before, in trust. Nor is Harriette Thiell, secretary of the clubs, and an employee of Bunker's company, in any different situation. As to Bunker and Thiell, then the judgment is easily affirmed on the ground that a plain, deliberate breach of trust has been shown, for the consequences of which they are liable to the unit holders originally and to the corporation, the World Oil Company, which they organized to represent and stand for the unit holders, and to take over all their assets.

██ Under the circumstances shown in this case, it does not lie in the mouth of the trustees to set up against the creature they formed to take over the trust, that it cannot sue them for their failure to deliver part of the assets of the trust they formed it to take over. In the light of these circumstances, which show, not secret profits made by a promoter sued for by the company he promoted, as was the case in Davis v. Las Ovas Co., 227 U. S. 80, 33 S. Ct. 197, 57 L. Ed. 426; Old Dominion Copper Co. v. Lewisohn, 210 U. S. 206, 28 S. Ct. 634, 52 L. Ed. 1025; Slick v. U. S. (C. C. A.) 1 F.(2d) 897; South Penn Collieries v. Sproul (C. C. A.) 52 F.(2d) 557, but property diverted from the trust sued for by the successor trustee, it is not necessary to determine under which line of decisions this case falls. It is maintainable upon the broad powers of a trustee to follow and gather in trust property, and hold to an account those who have taken it.

██ As to the Humble Oil Company, the situation stands not so differently. There is indeed no proof, nor even contention, that the Humble Company corruptly assisted the trustee in defrauding his beneficiaries. It is, however, undisputed in the record that the attention of their legal examiner, to whose judgment the closing of the trade was by the contract left, was directly called to the situation by the attorney for Bunker, and that he, knowing of the circumstances under which the property had been acquired and the conditions under which it was being held and developed, undertook to wash his hands of the responsibility for obtaining the consent of the unit holders upon the legalistic finding that the descriptions were too indefinite to fix themselves upon any property; that the certificate holders had no interest in the property, but only in the proceeds; and that the legal owner had the power to sell it as he pleased. Further, it was undisputed that the attention of the examiner was excited, and his apprehension aroused, by the fact that Bunker, an officer of the company, had acquired an interest near the well. He permitted his interest to be satisfied, his apprehensions allayed, by the resolution of the board of directors of the corporation trustee, Bunker's creature. Finally it appears clearly enough from the evidence that the plan conceived by Bunker for obtaining the consent and approval of the unit holders by organizing the World Oil Company was communicated to Cleaves, the title examiner, who, though in his testimony he said he made a joke of it, was kept fully advised of progress. In carrying out this plan, Bunker caused circulars to be sent out, advising the unit holders that a sale had been made of their property, and of some of his own, in which he withheld from them the fact that he had sold part of their property to the Humble Company as his, and that he was taking a large part of the consideration for himself. Charged in law with the knowledge of facts it would have found out had the examiner's investigation been made wholeheartedly, with the purpose of confirming, instead of allaying, the apprehensions which the facts disclosed to him aroused, the Humble Company made an agreement to pay Bunker $75,000 for the 40 acres which he had seized from the trust, and later recognized division orders giving him and Greene a part of the oil runs which, by the agreement the Humble Company had made, belonged to the company he had formed to take the trust over.

Under these circumstances, though they knew in law, if not in fact, that they were assisting Bunker in the appropriation to himself of moneys which should have gone to his beneficiaries, though they knew that he was to form the company and secure the consent of the unit holders to his plan, they left everything to him. They took no pains to know whether the unit holders had been notified of the true facts, and with full acquiescence had ratified the transaction. Notwithstanding the sale contract provided that

the $1,050,000 which was to be paid from oil was to be paid to Bunker Printing & Book Company, the Humble Company, without protest, and without advising the unit holders of the misappropriation that was going on, honored the division orders, signed by the company under the domination of Bunker, Thiell, and Greene, under which they reached into the trust, and in an effort to take out $150,000, did take out $67,000 more out of the first proceeds of the oil.

We think it cannot be doubted that, though, outside of the benefit it hoped to get by putting the trade through, the Humble Company received no benefit from these misappropriations, and had no intention to participate in a fraud, this is a plain case of their having paid moneys to a trustee with full knowledge that it was being abstracted from the trust, and that, limitation and laches aside, there can be no question of its liability for such payments. These defenses do raise an apparent difficulty, but the difficulty is only apparent. It cannot be contended that the beneficiaries have deliberately lain by and with knowledge permitted it to operate and develop the property, or that the Humble Company has been misled by anything the beneficiaries have knowingly done, for it is undisputed that all of their actions have been in complete ignorance, an ignorance growing out of the fraudulent concealment of Bunker and his domination of the company thereafter, contributed to by the actions of the Humble Company itself.

It is pressed upon us, however, that, if the Humble Company stands charged with a trust at all, it is only a constructive one, and many authorities are cited to the effect that limitation commences to run as soon as the trust is raised. We think the rule invoked has no application here in the light of the paramount consideration which we have stated in the outset of this opinion, that here is a case of an express trustee deliberately defrauding his beneficiaries under conditions which the Humble Company knew in part in fact, and altogether in law, and of which the beneficiaries knew nothing. Here is a case of a continued concealment made possible by the acquiescence of the Humble Company. This acquiescence was manifested by a closing of the eyes to obvious facts, a shifting of the responsibility for obtaining the consent of the unit holders to the trustee who was going about to defraud them, and by an active consenting to his further spoliation in procuring a division order for oil runs belonging to the trust. Under these circumstances equity ought not to permit, and we think it will not, either limitation or laches to apply against those who, ignorant of the defrauding, have been unable to defend themselves. We think the principles laid down in Bailey v. Glover, 21 Wall. 342, 22 L. Ed. 636, Exploration Co. v. United States, 247 U. S. 435, 38 S. Ct. 571, 62 L. Ed. 1200, apply to prevent the company from asserting either limitation or laches against the suit.

As to the money paid Greene, we think the District Judge was right for the reason he gave in declining to give judgment against Greene and the Humble Company for $75,000 cash paid him; we think he was right, too, in giving judgment against them both for the oil runs he got. It goes without saying that, when Greene joined with Bunker in reaching into the trust property to despoil it of its oil runs, he committed a breach of trust, and that, when the Humble Company paid it to him, they knowingly connived at that breach. We think the decree was right throughout.

Against the appeals and cross-appeal, it is affirmed.