COMPTON *v.* FISHER-McCALL, INC.

1. MINES AND MINERALS—OIL AND GAS LEASES—COVENANTS AS TO EXPLORATION.

   Leases of land for exploration and development of oil and gas wells are generally. recognized to be based upon the express or implied covenant to explore the land and produce gas and oil, if same may be found in paying quantities.

2. SAME—IMPLIED COVENANT TO DRILL OFFSET WELLS.

   In the absence of an express provision in an oil and gas lease relative to drainage of oil from leased lands by producing wells on adjoining lands, there is an implied provision on the . part of the lessee to protect the leased premises by drilling offset wells if, considering the cost thereof and possible profits therefrom, he would be doing what an ordinarily prudent man should do under the circumstances.

3. APPEAL AND ERROR—JUDGMENT NON OBSTANTE VEREDICTO—EVIDENCE.

   In reviewing trial court's decision denying defendant's motion for judgment *non obstante veredicto,* the facts are viewed in a light most favorable to plaintiff to ascertain whether the minds of reasonable men could honestly reach different conclusions.

4. MINES AND MINERALS—FAILURE TO DRILL OFFSET WELLS—QUESTION FOR JURY.

   Questions as to credibility of witnesses who present conflicting views as to presence of oil upon plaintiff's property and the weight that should be placed upon their testimony were for the jury to decide in her action against lessee for damages for loss of oil drained from her premises because of defendant's failure to drill offset wells.

5. APPEAL AND ERROR—VERDICTS—WEIGHT OF EVIDENCE.

   On an appeal in an action at law where it is contended the verdict is against the weight of the evidence, it is the duty of the Supreme Court to examine the testimony and determine whether the verdict is manifestly against the clear weight of the evidence.

6. SAME—CONFLICTING TESTIMONY—VERDICT.

Where there is a sharp conflict of evidence on the principal issue of fact and there is evidence in support of the contention of both parties from which the jury could have decided the question either way, the reviewing court will not disturb the judgment, for that would be an invasion into the jury's duty.

7. MINES AND MINERALS—BREACH OF IMPLIED COVENANT IN OIL LEASE TO DRILL OFFSET WELLS—DAMAGES—EVIDENCE.

In action by lessor against lessee for breach of an implied covenant in oil and gas lease to protect against drainage into wells belonging to adjoining owners having producing wells by drilling offset wells on leased premises, while just what damages are suffered as a result of the breach of covenant may not be proved with mathematical certainty, the best evidence of which the subject will admit is receivable even though it be only the opinion of a well-informed person upon the subject under investigation.

8. SAME—DAMAGES—BREACH OF IMPLIED COVENANT IN OIL LEASE—EVIDENCE.

Testimony that oil which might have been produced from wells on plaintiff's lands but for defendant's breach of implied covenant to drill offset wells to prevent drainage into producing wells on adjoining lands could have been sold at a profit equal to at least the amount of the verdict *held*, sufficient proof of damages for breach of such covenant.

9. ACTION—NONJOINDER OF PARTIES—DIVISIBLE COVENANT.

Plaintiff lessor under oil and gas lease, containing a provision for assigning all or part of her interest therein, who assigned a part to one who was not joined with plaintiff in action against lessee for breach of an implied covenant to drill offset wells, was entitled to maintain her action notwithstanding such nonjoinder since the implied covenant was divisible and apportionable.

Appeal from Van Buren; Warner (Glenn E.), J. Submitted April 10, 1941. (Docket No. 51, Calendar No. 41,489.) Decided September 2, 1941.

Action by Ella Compton against Fisher-McCall, Inc., for failure to drill offset oil wells on her property in violation of alleged implied covenant in lease,

resulting in loss of oil by drainage. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Howard, Howard, & Howard,* for plaintiff.

*McNamara & Browning, David Anderson* and *David Anderson, Jr.,* for defendant.

*Robert S. Beach, amicus curiae.*

CHANDLER, J. The plaintiff, Ella Compton, owned 120 acres of property in Bloomingdale township, Van Buren county, Michigan. It was divided into three separate forties known as the "west forty," "center forty," and "east forty." Directly to the south and adjoining plaintiff's property was another 120-acre piece similarly divided and known as the "Wiggins farm." Following is a diagram, though not drawn to scale.

| Fisher-McCall | J. W. McIntosh | Fisher-McCall | N |
|---|---|---|---|
| | Dry ● | Dry ● | W ←┼→ E ↓ S |
| Clark & Johnson 3 ● 4 ● 2 ● 1 ● Wiggins | 2 ● 1 ● 4 ● 5 ● Wiggins B | 3 ● 2 ● Discovery 4 Well 1 ● ● Wiggins A | 2 ● 1 ● Williams |

On April 11, 1938, plaintiff signed an oil-and-gas lease to J. A. Zerkel covering the whole 120 acres, and on July 27, 1938, it was assigned by Zerkel to the defendant, Fisher-McCall, Inc. The defendant

also owned the lease on the Wiggins 120 acres. It assigned the lease on the center forty of the Compton property to J. W. McIntosh and the lease on the west forty of the Wiggins property to Clark & Johnson.

After these events, and on August 30, 1938, the plaintiff executed and delivered a mineral deed to the Stewart Norton Petroleum Corporation by which it was granted a one-fourth interest in the royalties that might be earned as a result of the lease.

The lease signed by plaintiff with Zerkel carried the regular royalty of one-eighth of the oil produced and saved from the premises, and provided that either party could assign in whole or in part his privileges thereunder.

On August 18, 1938, a discovery well was drilled by defendant on the southeast corner of Wiggins "A." Shortly thereafter defendant drilled wells A-2, A-3 and B-1 on the Wiggins property. They were completed about September 20, 1938, and were all "producers," which means oil was obtained in commercial quantities.

About the same time J. W. McIntosh drilled a well on the southeast corner of the Compton center forty and this proved to be a dry hole. The so-called Williams No. 2 on the property just east of the Wiggins Farm was completed on September 23, 1938, and there was so much water in the well that it was considered as noncommercial.

The defendant then drilled on the southeast corner of the east forty of plaintiff's property, and this came in a dry hole on November 3, 1938.

The next drilling was done by Clark & Johnson on the west forty of the Wiggins property. They drilled wells 1 and 2 which came in on November 27, 1938, and December 19, 1938, respectively, and both were

commercially productive. On March 26, 1939, they drilled No. 3, but it was a poor producer, giving very little oil, and around the latter part of June or the first part of July, 1939, was abandoned because it produced too much water. No. 4 was drilled sometime in April, 1939, and this came in a water well and was of no value.

The wells known as the Wiggins A-2, A-3 and B-1 were plugged the latter part of February or first part of March because there was then so much water produced by them that they were considered as non-commercial.

The discovery well, Wiggins A-1, was still producing at the time of the trial which was the latter part of the summer of 1939.

The plaintiff claims that the defendant, in violation of the implied covenant of the lease, failed to drill offset wells on her property and, through wells operated on the adjoining Wiggins property, oil was drained from her land causing her damages for which this action was brought.

At the conclusion of plaintiff's proofs, defendant moved for a directed verdict, and the motion was taken under advisement pursuant to the Empson act.* The jury returned a verdict for plaintiff, and defendant then filed a motion for judgment notwithstanding the verdict. The circuit judge denied both motions, and defendant then moved for a new trial, alleging the verdict was against the great weight of the evidence and that the verdict, which was for $3,800, was excessive. The judge ruled that the motion would be granted unless plaintiff consented that the verdict be reduced to $2,535. Plaintiff consented to the remittitur and it is from this judgment that defendant appeals.

---

* 3 Comp. Laws 1929, § 14531, as amended by Act No. 44, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 14531, Stat. Ann. 1940 Cum. Supp. § 27.1461).—Reporter.

As far as this case is concerned, the rule of law as to implied covenants to drill "offset" wells is accepted by defendant to be as follows:

"Leases of land for exploration and development of oil and gas wells are generally recognized to be based upon the express or implied covenant to explore the land and produce gas and oil, if same may be found in paying quantities. This is the real purpose and consideration for such leases. And in view of the characteristics of oil and gas and their elusive and migratory nature, rendering them susceptible of being drained through wells operated upon adjoining land, and thus lost to the owner of the land whence they were drained, in the absence of an express provision to that effect, there is an implied provision upon the part of the lessee that he will protect the leased premises from drainage by wells on adjoining lands, by drilling 'offset' wells. And it is the duty of the lessee to drill such 'offset' wells, if, considering the cost of the well and the possible profits therefrom, he would be doing what an ordinarily prudent man should do under the circumstances." 19 A. L. R. 437.

As to the question of whether an offset well should have been drilled upon the east location of the west forty of plaintiff's property, we need not consider, for plaintiff, by consenting to the remittitur, admits there was not proof of a reasonable probability that oil in profitable quantity would be found on that location.

The main question here involved is, whether as a matter of law there was any factual issue to submit to the jury, and, if so, whether their verdict was against the great weight of the evidence.

The rule laid down in *Stephens* v. *Koprowski,* 295 Mich. 213, is that in reviewing the trial court's decision denying the defendant's motion for judgment *non obstante veredicto,* the facts are reviewed

in a light most favorable to plaintiff, and the test for the determination is whether the minds of reasonable men can honestly reach different conclusions. See, also, *Funk* v. *Tessin,* 275 Mich. 312; *Dzikowski* v. *Railroad,* 282 Mich. 337.

Using this test, we are unable now to hold that as a matter of law there were no questions of fact presented by the evidence. The testimony of the plaintiff's experts as to the probability of oil under her property presented an issue of fact that was proper to submit to the jury. All questions as to the credibility of these witnesses and the weight that should be placed upon their testimony were for the jury to decide. Whether or not property situated as this is has oil upon it certainly presents a question upon which reasonable men may very properly have different opinions. There was no error in the trial court's ruling denying defendant's motion for judgment *non obstante veredicto.*

It is next contended by the defendant that the verdict is against the great weight of the evidence and impossible to support by the record.

It should be remembered that this court is not the trier of the facts, but rather our duty is to examine the testimony and determine whether the verdict is manifestly against the clear weight of the evidence.

We must look at the case as of the time that the wells on the property just south of plaintiff's east forty were producing, and the structure of the land and whether the probable limits of the oil field were as yet undetermined. Could it then be said that a reasonably prudent operator, with full knowledge of all such facts and circumstances, in the exercise of ordinary care, would have thought that substantial drainage was taking place and have drilled offset wells with the reasonable expectation of producing oil therefrom in paying quantities? The testimony

of the witnesses for plaintiff certainly bears out the
contention that such was the reasonable expectation
as of that time.    Also, from the physical facts such
a conclusion might reasonably be made.    This was
all denied by the defendant, and testimony leading
to just the opposite conclusion was put in evidence,
but where there is sharp conflict of evidence on the
principal issue of fact, there being evidence in sup-
port of the contention of both parties from which
the jury could have decided the question either way,
the reviewing court will not disturb the judgment,
for that would be an invasion into the jury's duty.
*Powers* v. *Superior Land & Gravel Co.*, 233 Mich.
20.

We have reviewed the evidence in detail and are
unable to hold that the judgment was against the
great weight of the evidence.    Even if the experts
of plaintiff are, as claimed by defendant, only
theorists and not practical oil men, still their opin-
ions are worthy of consideration and the members
of the jury have the right to believe what they say.
At best, the whole question is but a matter of opin-
ion, and when such is the case the appellate court
must of necessity place a great deal of reliance
upon the findings of the jury, for they have the best
opportunity to judge the testimony at the time it is
given by the witnesses.

In cases like this, the proof of just what damages
are suffered as a result of the breach of covenant
is by its very nature impossible to prove with math-
ematical certainty.    True, the law will not permit
witnesses to speculate or conjecture as to possible
or probable damages, still, the best evidence of
which the subject will admit is receivable, and this
is often nothing better than the opinion of a well-
informed person upon the subject under investiga-
tion.

Plaintiff introduced sufficient testimony that the oil which might have been produced could have been sold at a profit equal to at least the amount of the verdict.

The final contention made by defendant is that there was a nonjoinder of proper parties based on the theory that there was only one cause of action and not to join the Stewart Norton Petroleum Company would be to split the cause of action. We hold the trial judge ruled properly in this matter, and quote what he said in regard thereto:

"The plaintiff did not have a cause of action to split when the mineral deed was executed. The lease gave her the privilege of assigning the whole or any part of her interest and provided that the covenants of the lease should extend to her assigns. The lessee could have had a clause in the instrument forbidding assignment of any part of the royalty interest and thus avoid suit by more than one party, because it is well known that interests in leases are sold and assigned to many.

"The implied covenants of the lease were divisible and apportionable."

The judgment of the trial court is affirmed, with costs to plaintiff.

Sharpe, C. J., and Bushnell, Boyles, North, Wiest, and Butzel, JJ., concurred. McAllister, J., took no part in this decision.