## METROPOLIS THEATRE CO. v. BARKHAUSEN et al.

### No. 9630.

United States Court of Appeals
Seventh Circuit.

Nov. 11, 1948.

Rehearing Denied Dec. 9, 1948.

As Modified Dec. 20, 1948.

Walter Bachrach, Robert Bachrach, Walter H. Moses, and Arthur C. Bachrach, all of Chicago, Ill. (B. B. Fensterstock, of New York City, of counsel), for appellant.

Carl H. Zeiss, Herbert Friedlich, Edward R. Johnston, Samuel W. Block, Louis M. Mantynband, George L. Siegel, and Edward Blackman, all of Chicago, Ill., for appellees.

Irvin F. Richman, of Chicago, Ill., for Oriental Entertainment Corporation, S & S

Theatres Corporation, and Edwin Silverman, appellees.

William D. Doggett, of Chicago, Ill., for Continental Illinois Nat. Bank & Trust Co. of Chicago, appellee.

Before MAJOR and KERNER, Circuit Judges, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

This suit is by Metropolis Theatre Company, a New York corporation, against L. H. Barkhausen and Randolph Bohrer, individually and doing business as The Doubleby Co., Herman Brash, individually and as Trustee for L. H. Barkhausen and Randolph Bohrer under agreement dated January 29, 1946; Edward Blackman, Lucille K. Smith; Oriental Entertainment Corporation; Essaness Theatres Corporation, Edwin Silverman, 32 West Randolph Corporation, Continental Illinois National Bank and Trust Company of Chicago, I. V. Cage, The Northern Trust Company and Harold L. Costello, citizens of Illinois, except Essaness which is a Delaware corporation.

Plaintiff's suit is primarily for termination of the ground lease upon part of Lots 5 and 6 of Block 36 in the Original Town of Chicago, Cook County, Illinois, more familiarly known as 32 West Randolph Street, in which it is lessor. The basis for termination of the lease and recovery of the demised premises is in part that certain assignments of the ground lease were in violation of its terms.

There is situated upon the demised premises the larger portion of a theatre contained within the lower floors of a 22-story office building. The remainder of said theatre and of said building is situated upon adjoining premises owned by the trustees under the will of John R. Thompson, deceased.

The jurisdiction of the federal court was predicated upon diversity of citizenship and the requisite amount involved. Defendants by their motion to dismiss contended that John R. Thompson, Jr., Henry M. Henriksen, and Harris Trust and Savings Bank, as such Trustees (hereinafter called the "Thompson Lessors" or "Thompson"), were indispensable parties to be aligned on the side of plaintiff, and since the Thompson lessors are citizens of Illinois, their joinder would destroy the requisite diversity of citizenship.

The District Court found that the Thompson Lessors were indispensable parties plaintiff to the action, as their interest in the subject matter was joint and not distinct and severable from the interest of the plaintiff; that a decree in this matter could not be made without affecting their interest; that a final determination of the controversy in their absence, would be inconsistent with equity and good conscience, and dismissed the complaint.

The evidentiary facts considered by the court were contained in the complaint, exhibits attached thereto and affidavits supporting the motion together with attached exhibits. Reference is made to Footnote [1]

[1] Plaintiff is the ground lessor of Lots 5 and 6 underlying the 22-story building and theatre, and Thompson is the ground lessor of that part of Lot 7 immediately east of and contiguous to the premises of plaintiff and also underlying the building and theatre.

In 1924 a 77-year lease was entered into between plaintiff and United Masonic Temple Corporation, as lessee, hereinafter referred to as the "Metropolis lease." At the same time, a similar lease was entered into between Thompson, as lessor, and the United Masonic Temple Corporation, as lessee. Both leases of similar import, obligated the lessee to erect an office and theatre building upon the joint tract at a cost of not less than $2,900,000 and the present 22-story building was the result. Thereafter, the United Masonic Temple Corporation assigned its interest as lessee to the defendant, 32 West Randolph Corporation, hereinafter sometimes called Randolph.

On May 1, 1935, Randolph executed its mortgage trust deed to the defendant, Continental Illinois National Bank & Trust Company of Chicago, as trustee, to secure its first mortgage leasehold bonds in the amount of $2,678,500. This mortgage was executed pursuant to a plan of reorganization of a prior leasehold mortgage executed by the United Masonic Temple Corporation.

On September 15, 1935, a single agreement was entered into between Metropolis as ground lessor, Thompson as ground lessor, and Randolph as ground lessee, whereby the two ground leases were modified and Randolph undertook certain ob-

for a somewhat detailed statement of the facts. There appears to be no conflict in respect to those facts but only as to their effect.

The complaint prayed that the court decree (a) that termination and forfeiture of the Metropolis lease be enforced as of December 31, 1945; (b) that the theatre sublease be held at naught and be nullified as of December 31, 1945; (c) that the rights of the defendants under the Metropolis lease and the theatre sublease be forever

ligations for the mutual benefit of Metropolis and Thompson. On November 1, 1939, an agreement was entered into between Metropolis and Randolph modifying the 1924 Metropolis lease and cancelling the 1935 amendment. On the same day a similar agreement was entered into between Thompson and Randolph with respect to the Thompson lease.

The 1939 amendment to the Metropolis lease recites that Randolph has become the owner of the lessee's interest under the Metropolis and Thompson leases; that the original lessee had erected on both premises a 22-story building "which is so constructed that it forms a complete structure located on the premises demised by both indentures of lease, and in the event of a default under either or both of said indentures of lease neither part of said building could be operated separately from the other without the expenditure of considerable money by the owner or owners of the lessor's interest under each of said leases," and that if either lessor forfeited the lease, "said lessor so forfeiting and terminating will become possessed of a portion of the building located on said premises, and without the expenditure of a considerable sum of money will be unable to operate the said premises except in conjunction with the other lessor".

The 1939 amendment to the Metropolis lease further recites that Randolph has negotiated an amendment to the Thompson lease in consideration of a similar amendment to the Metropolis lease, and that Thompson "is ready and willing to enter into an agreement with Randolph to be executed and delivered simultaneously with this agreement, whereby and wherein the Thompson Estate will similarly alter, amend, and modify certain of the provisions of its lease and agree to certain divisions and application of net income from the demised premises as between Randolph, Metropolis and the Thompson Estate, as set forth and provided in an instrument of amendment with Thompson Estate attached and marked "Exhibit A". A similar provision was contained in the 1939 amendment to the Thompson lease.

The 1939 amendment to the Metropolis lease further states that in "consideration of the simultaneous execution and delivery by Thompson to Randolph of an in-

strument of amendment, alteration, and modification as aforementioned", Metropolis agrees to the amendment of the Metropolis lease.

The 1939 amendment of the Metropolis lease provides for the payment to Metropolis of a fixed rental, plus an additional rental based on a percentage of the net income from the building on the leased premises, which is defined as the premises demised under both the Metropolis lease and Thompson lease. It provides that from the gross income there shall be deducted the operating expenses and disbursements for repairs and maintenance of the building and that a default under the Thompson lease constitutes a default under the Metropolis lease, and that upon the termination of the lease, a certain right of way shall pass to the Thompson and Metropolis lessors for the benefit of the theatre premises. The 1939 amendment to the Thompson lease is substantially identical with the 1939 amendment to the Metropolis lease and refers to the Metropolis lease and amendment.

On January 1, 1936, Randolph subleased the theatre portion of the premises covering the property of both lessors to Oriental Theatre Company for a term of 40 years. In 1938 Oriental Theatre Company assigned said lease to Southern Theatre Properties, Inc. To induce Southern Theatre Properties, Inc. to accept the lease, an agreement dated November 10, 1938 was entered into between Metropolis, Randolph and Southern Theatre Properties, Inc., wherein Metropolis agreed that in the event of the termination of the ground lease "by reason of any default in the terms, conditions and provisions thereof (Metropolis) will recognize the tenancy of Southern Theatre Properties, Inc., and will assume and adopt the obligations and covenants of the lessor" under the theatre sublease. A substantially similar agreement was made between Thompson, Randolph and Southern Theatre Properties, Inc.

By instrument dated February 25, 1941, Southern Theatre Properties, Inc., assigned its theatre sublease to I. V. Cage and on April 15, 1941, an operating agreement was entered into between Randolph and Cage. On December 8, 1945, I. V. Cage assigned the theatre sublease to Oriental Entertainment Corporation and

barred; (d) that possession of the demised premises be surrendered to plaintiff and that defendants be enjoined from interfering with the possession of plaintiff; (e) that said enoumbrances be removed from plaintiff's title to said premises; and (f) that defendants account to plaintiff for the profits from said premises.

■ Under section 24(1) of the Judicial Code, 28 U.S.C.A. § 41(1) [now § 1332], the federal court does not have jurisdiction unless all parties on one side of the controversy are of a citizenship diverse to all those on the other side. City of Indianapolis v. Chase Nat. Bank, 314 U.S. 63, 52 S.Ct. 15, 86 L.Ed. 47, 48; Treinies v. Sunshine Mining Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85.

■ The requirement for complete diversity cannot be brought about by a party failing to join, either with himself or on the opposite side, a party who is an indispensable party to the action, even though joining the absent party would result in a loss of jurisdiction by the federal court. Calcote v. Texas Pacific Coal & Oil Co.,

5 Cir., 157 F.2d 216, 222, 167 A.L.R. 413; Cohen v. Maryland Casualty Co., D.C., 4 F.2d 564, 565; Small v. Frick, D.C., 40 F.Supp. 778; Kentucky Natural Gas Corp. v. Duggins, 6 Cir., 165 F.2d 1011, 1015. If the Thompson lessors should be joined as parties, they will, for the purpose of determining the question of diversity of citizenship, be aligned according to their real interest in the controversy, regardless of whether they are technically named as plaintiffs or defendants. City of Dawson v. Columbia Ave. Saving Fund, Safe Deposit, Title, & Trust Co., 197 U.S. 178, 25 S.Ct. 420, 49 L.Ed. 713, 716; Niles-Bement-Pond Co. v. Iron Moulders' Union, Local No. 68, 254 U.S. 77, 41 S.Ct. 39, 65 L.Ed. 145, 148; City of Indianapolis v. Chase Nat. Bank, 314 U.S. 63, 52 S.Ct. 15, 86 L.Ed. 47, 48. The pertinent Federal Rule of Civil Procedure is Rule 19, 28 U.S.C.A., which is merely declaratory of the law as it existed before the adoption of the rule. United States v. Washington Institute of Technology, 3 Cir., 138 F.2d 25, 26; Society of European Stage Authors and Composers v. W.C.A.U. Broadcasting Co., D.C., 1

---

on December 31, 1945, Randolph consented to this assignment.

On January 29, 1946, Randolph assigned its interest under the ground leases to Lucille Smith; and on the same date Lucille Smith assigned said ground leases to Herman Brash, as Trustee under the provisions of a Trust Agreement dated January 29, 1946 and known as the Brash Trust. Smith and Brash each expressly accepted and assumed all the terms, covenants and provisions of the Metropolis lease and the Thompson lease and all amendments, revisions, supplements and modifications thereto. L. H. Barkhausen and Randolph Bohrer, doing business as Doubleby Co., are the beneficiaries of the Brash Trust.

From and after January 1, 1946, the theatre portion of the property has been operated by Oriental Entertainment Corporation and Doubleby, as provided in the Brash Trust, is operating the demised premises other than the theatre portion. Rents have been tendered to Metropolis, but all payments of rent since December 31, 1945 have been refused.

On April 15, 1946, an involuntary petition for reorganization of 32 West Randolph Corporation, as debtor, was filed by certain creditors in the United States District Court for the Northern District of Illinois. Metropolis and Thompson both became parties to said proceedings and participated therein. On May 20, 1947, an order was entered in said reorganization proceedings upon the petitions of Metropolis and Thompson whereby Metropolis and Thompson, or either of them, were given authority with certain specified limitations, to institute a plenary suit against Randolph.

On June 2, 1947, the directors of Metropolis passed a resolution to forfeit the ground lease and the theatre sublease. The resolution incorporated a form of notice of forfeiture to be served upon the parties in possession, and the notice of forfeiture was thereafter served upon the parties in possession.

Paragraph 12 of the Metropolis lease provides that the lessor may terminate the lease if default is made by the lessee, if "such default shall continue ninety (90) days after notice thereof in writing to said lessee". This paragraph also provides that in the event of a mortgage upon the leasehold estate, a similar notice of default shall be served upon the mortgagee, which provision remains in full force and effect. (The complaint does not allege the service of any such 90-day notice, but alleges that the 90-day notice is unnecessary.)

F.R.D. 264, 266; Wesson v. Crain, 8 Cir., 165 F.2d 6, 9; Shell Development Co. v. Universal Oil Products Co., 3 Cir., 157 F.2d 421, 424; Currier v. Currier, D.C., 1 F.R.D. 683, 684; Spanner v. Brandt, D.C., 1 F.R.-D. 555, 556.

In United States v. Washington Institute of Technology, supra, the Court stated:

"Rule 19(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, requires that those having 'a joint interest shall be made parties * * *.' This means those who were indispensable parties prior to the rules. 2 Moore's Federal Practice (1938) § 19.02."

█ Indispensable parties are persons who have an interest in the controversy of such a nature that a final decree without them cannot be made without either affecting that interest or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience. In Niles-Bement-Pond Co. v. Iron Moulders' Union, Local No. 68, 254 U.S. 77, 41 S.Ct. 39, 41, 65 L. Ed. 145, 147, the Court said:

"There is no prescribed formula for determining in every case whether a person or corporation is an indispensable party or not; but a rule early announced and often applied by this court is sharply applicable to the case at bar. In Shields v. Barrow, 17 How. 130, 139, 15 L.Ed. 158, [160], this language—quoted with approval in Barney v. City of Baltimore City, 6 Wall. 280, 284, 18 L.Ed. 825, [826], and again in Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 48, 30 S.Ct. 10, 54 L.Ed. 80, [86]—was used to describe parties so indispensable that a court of equity will not proceed to final decision without them, viz.:

"'Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.'"

The rule so expressed has been followed by this Court in DeKorwin v. First Nat. Bank, 7 Cir., 156 F.2d 858. Another statement of the rule by this Court is found in Montfort v. Korte, 7 Cir., 100 F.2d 615, 617, as follows:

"The courts make a distinction between necessary and indispensable parties. Typical of such is State of Washington v. United States et al., 9 Cir., 87 F.2d 421, where on page 427 is found the citation to a large number of such authorities. The court there on the same page lay down the rule for making such determination as follows:

"'After first determining that such party is interested in the controversy, the court must make a determination of the following questions applied to the particular case: (1) Is the interest of the absent party distinct and severable? (2) In the absence of such party, can the court render justice between the parties before it? (3) Will the decree made, in the absence of such party, have no injurious effect on the interest of such absent party? (4) Will the final determination, in the absence of such party, be consistent with equity and good conscience?'

"It then determined that * * * if any one of the four questions * * * is answered in the negative, then the absent party is indispensable."

█ Whether the Thompson lessors are indispensable parties must be determined from all the facts in the case, and the nature of the relief sought. A single 22-story office and theatre building has been erected on the adjoining properties of Metropolis and Thompson by the lessee under the ground lease, pursuant to the provisions of both the Metropolis and Thompson leases, at a cost exceeding $2,900,000. Both leases were executed concurrently, contain substantially the same provisions except for difference in the amount of rental, and run for a term of 77 years from May 1, 1924 to April 29, 2001. Reference to the Thompson lease is made in the Metropolis lease and vice versa. In 1935 both leases were amended by a single document executed by Metropolis, Thompson and the lessee. In 1939 the two leases were again amended by substantially similar agreements. Though separate amendatory agreements were signed for each lease, each agreement expressly provided that it

was being executed in consideration of the execution of the other agreement. The amendment to each lease is attached as an exhibit to the other. Each such amendment recites that in the event of a default under, and termination of, either or both of said indentures of lease, neither part of said building could be operated separately from the other without the expenditure of considerable money by the owner or owners of the Lessor's interest under each of said leases. The 1939 amendments to both leases contain other parallel recitals.

Under the ground leases, amendments thereto and supplemental and subsequent agreements, operating expenses, repairs and maintenance of the building are payable from the gross income of the building as a single unit. Each lessor is allocated a percentage of the net income from the entire property. Metropolis does not receive the rent from its Lots 5 and 6, and Thompson the rent from Lot 7; but rather, each lessor receives a stipulated percentage of the aggregate net income of the building as a unit. A default under the Thompson lease is expressly made a default under the Metropolis lease; and similarly a default under the Metropolis lease is considered a default under the Thompson lease.

The theatre portion of the building is located partly on the Metropolis tract and partly on the Thompson tract. A single theatre sub-lease was executed for the entire theatre premises, and both the Metropolis tract and the Thompson tract are therein described. A single rental is payable for the entire theatre premises. Metropolis and Thompson each agreed to recognize the theatre sublease if the respective ground leases were terminated. In that event, Metropolis is to receive 66⅔ percent of the rental and Thompson .33⅓ percent. Upon the forfeiture of the ground leases, both Metropolis and Thompson succeed to the rights of the lessors under the theatre sublease. Both Metropolis and Thompson, therefore, have a common interest in a single rental, payable by the lessee occupying a theatre erected on both parcels. Metropolis and Thompson together have a common interest in the performance by the theatre lessee of all its obligations under the lease.

In Calcote v. Texas Pacific Coal & Oil Co., 5 Cir., 157 F.2d 216, 167 A.L.R. 413, certiorari denied, 329 U.S. 782, 67 S.Ct. 205, 91 L.Ed. 671, the lessors under an oil lease filed suit to cancel the lease. The lessors had agreed to pay an overriding royalty to certain persons not parties to the suit. These royalty grantees were not parties to the oil lease. The court ruled that the royalty grantees were indispensable parties in the cancellation suit. In Calvert v. Bradley, 16 How. 580, 57 U.S. 580, 14 L.Ed. 1066, the Court considered a situation where the lessee had covenanted with several lessors to keep the demised premises in repair, and where the lease set out the proportions which the lessor owned and reserved the rent to them in those proportions. In answer to the contention that the covenant was not joint because its stipulations were with the several covenantees, severally and jointly, the Court held that all covenantees were interested in the preservation of the property demised. All lessors were held to be indispensable parties to the suit. The situation here, while not in all things the same, is substantially similar. Each of the lessors have an interest in the preservation of the property and the rights and interests of the other.

The interest of Thompson cannot be said to be distinct and severable from that of plaintiff. If plaintiff is successful in this litigation the interests of Thompson will be vitally affected. In the absence of Thompson a decree cannot be entered consistent with equity and good conscience.

It is our judgment that the Thompson interests are indispensable parties and, if made parties, would necessarily be aligned with plaintiff, thus defeating jurisdiction.

The District Court properly allowed defendants' motion and its judgment is affirmed without prejudice to a later consideration of the issues on the merits by a Court acquiring jurisdiction of the cause.

Affirmed.