CARTER OIL CO. et al. v. CRUDE OIL CO. (OKLAHOMA).

No. 4493.

United States Court of Appeals
Tenth Circuit.

Jan. 12, 1953.

Leon Shipp, Oklahoma City, Okl., (Forrest M. Darrough, Walter Davison, Tulsa, Okl., George T. Montgomery and T. Murray Robinson, Oklahoma City, Okl., were with him on the brief), for appellants.

Richard W. Fowler, Oklahoma City, Okl. (D. A. Richardson, Oklahoma City, Okl., was with him on the brief), for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

Appellee, Crude Oil Company, commenced this action against appellant, Carter Oil Company, to recover 1/6 of the royalty of oil produced from a well completed September 15, 1927. Recovery was sought of all the oil so produced from the date of the completion of the well to June 28, 1951, the date of the institution of this action, a period of approximately 24 years.

The facts out of which this controversy arose are these. In June, 1924, W. E. Grisso executed an oil and gas lease to E. M. Meyers on two non-contiguous tracts containing respectively 80 acres and 40 acres each. This lease by mesne conveyances became the property of Carter Oil Company. The lease contained what is commonly termed an entirety clause, providing in substance that if the leased premises should thereafter be owned in severalty the premises should nonetheless be developed as one lease and royalty accruing thereunder should be paid to the separate owners in proportion that their respective acreage bore to the entire leased acreage. About one year after the execution of the lease, Grisso conveyed a 1/4 mineral interest under the 80 acre tract alone, subject to the outstanding lease to Felix L. Gast. This interest by mesne conveyances became the property of Crude Oil Company.[1] By virtue of the entirety clause Crude became entitled to its share of any oil produced from either tract. About September, 1927, Carter Oil Company completed a producing oil well on the 40 acre tract. Carter has at all times since and was at the time of the trial of this action producing oil from this well. Crude Oil Company has never received any returns from this well.

The complaint alleged that Carter and Grisso knew at all times that Crude Oil Company owned an interest in the oil so produced; that they deliberately withheld from Crude all information respecting the drilling of the well and the production and sale of oil therefrom; that Carter and Grisso fraudulently concealed from Crude the facts respecting the production and sale of the oil; that such acts constituted fraud upon Crude Oil Company; that Crude did not learn until January, 1951, that Carter had drilled such a well; that since such discovery demand has been made upon Carter for an accounting, which has been refused. Prayer was for an accounting and for judgment for such amount as was found due.

Carter's motion to dismiss on the ground that Grisso, not a party to the action, was an indispensable party and in his absence the court lacked jurisdiction was overruled. Carter then filed a third party complaint against Grisso and J. A. Patterson, surety on Grisso's bond to Carter. In this complaint Carter sought judgment over against Grisso and Patterson for all sums which might be adjudged against it in favor of Crude Oil Company. So far as material Carter, Grisso, and Patterson all pleaded that laches was a bar to all sums claimed except those accruing within five years preceding the filing of the action. Trial was had to the court. It made findings of fact and conclusions of law and based thereon entered judgment against Carter for all sums found due from the entire production and entered judgment for Carter over against Grisso and Patterson on its third

---

1. Felix L. Gast and others to whom conveyances were made formed Crude Oil Corporation and conveyed their interests to it and became stockholders of the Corporation.

549

party complaint for the amount of judgment rendered against it.

■ It is urged that the trial court erred in failing to sustain Carter's motion to dismiss because of the absence of Grisso, an alleged indispensable party. An indispensable party is generally defined as one who has such an interest in the subject matter of the controversy that a final decree between the parties before the court cannot be had without affecting his interest or leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience.[2] Carter's contention that it is a mere stakeholder and that the real controversy is between Grisso and Crude Oil Company is not well founded. Carter was the lessee and Grisso and Crude Oil Company, by virtue of its assignment from Grisso, were in effect co-lessors. The lease expressly provided that the covenants thereof should extend to heirs and assigns. By such right of assignment the lessee's obligation to pay royalty extended separately and apportionately to the lessor and his assignees.[3] A case somewhat similar upon the facts is Hudson v. Newell, 5 Cir., 172 F.2d 848, where it was held that in a suit by one royalty holder against a lessee other royalty holders were not indispensable parties.

In Oxley v. Sweetland, 4 Cir., 94 F.2d 33, 37, the court said that "The thing that makes one an indispensable party to a suit is that some interest of his will be affected by it, not that questions of law or fact will be passed upon in which he is interested but by the decision of which he will not be bound." The question of Grisso's fraud toward his cotenant, Crude Oil Company, his trust relationship toward it with respect to the funds in question, Carter's knowledge of the trust relationship and that Grisso was misappropriating these funds were questions in the case in which Grisso was interested. But they were questions in issue only between Crude Oil Company and

Carter. While Grisso was interested in these questions, their determination in an action to which he was not a party would not be binding upon him subsequently if an action were instituted against him by either party to this action. The trial court apparently did not base its conclusions in this matter on this ground but since its decision is correct it must nonetheless be affirmed.

■ The trial court's finding and conclusion that Carter Oil Company was placed in the position of a trustee and was operating in a fiduciary capacity with respect to Crude Oil Company's interest in the production cannot be sustained. In Bunger v. Rogers, 188 Okl. 620, 112 P.2d 361, 363, the Oklahoma Court held that there was no trust relationship between the lessor or his assignees and the lessee of an oil and gas lease. It held that "The defendants were merely lessees under an oil and gas mining lease and were under no obligation to the plaintiff, other than to pay the rent and royalty provided in said lease, and if they breached this duty then their liability was purely a contractual one and in no sense fiduciary."[4]

But holding that Carter Oil Company stood in no trust relationship to Grisso or those to whom he assigned royalty is not dispositive of the questions inherent in this appeal. It seems clear from the record that at the time of the assignment of the mineral interest to Gast neither he nor Grisso comprehended the legal effect of the entirety clause of the lease and that both labored under the erroneous impression that the assignment conveyed only a mineral interest in the 80 acre tract. In response to the following question, "Is it not true that you and Doctor Grisso believed your *minteral* interest only related to this 80 acre tract?" Gast answered "At the time I bought it, Yes, Sir." It is, however, obvious that thereafter Grisso learned that the entirety clause gave Gast an interest in the production from the 40 acres not included in the

2. Franz v. Buder, 8 Cir., 11 F.2d 854; Metropolis Theatre Co. v. Barkhausen, 7 Cir., 170 F.2d 481.

3. See also Compton v. Fisher-McCall, 298 Mich. 648, 299 N.W. 750; Kimbley v. Luckey, 72 Okl. 217, 179 P. 928.

4. To the same effect see Indian Territory Illuminating Oil Co. v. Killingsworth, 175 Okl. 78, 51 P.2d 505.

assignment to Gast. In May, 1929, Carter's attorney wrote Grisso referring to an oral conversation concerning the lease and stating that while Grisso was the owner of the entire royalty interest under the 40 acre tract where the well was located Carter had information that Gast and Hulett were interested in the ownership of the royalty under the 80 acre tract. Attention was called to the entirety clause under which the attorney expressed the view that Grisso's grantees would be entitled to participate in the royalty from this 40 acre tract. The letter went on to recite that the land had been involved in litigation and that the royalty had been paid to Grisso under his personal indemnity bond to Carter but that some steps should be taken to effect an arrangement with the royalty owners under the 80 acre tract as to the manner in which the royalty money should be distributed. W. D. Grisso, an attorney and the son of W. E. Grisso, answered requesting that he be given a little time to investigate the matter and that since Carter held his father's indemnity bond it could safely pay the royalty to him. Carter answered immediately stating that it would not insist upon an immediate adjustment but that the matter should be adjusted before it went too far and that Carter assumed that Grisso would want to adjust it as soon as possible. In less than a month Carter's attorney wrote Grisso again stating that unless the matter was adjusted Carter would withhold sufficient of the proceeds to cover any amount that might be demanded by the royalty owners under the 80 acre tract and that it had not withheld the money, anticipating that Grisso would make some arrangements with these outside interests. This letter was answered by Grisso's attorney asking additional time. Further correspondence took place all on the part of Carter, urging a settlement, and on the part of Grisso asking for additional time in which to adjust the matter. From this correspondence it seems clear that while there was disagreement as to the rights of Grisso's assignees to share in the production from the 40 acre tract Carter consistently took the correct position that they were entitled to share in such production. Having Grisso's indemnity bond, it did not press for an immediate solution of the problem, gave Grisso additional time, but throughout insisted that a settlement be made.

The conclusion is inescapable that while at the inception of the transaction Grisso may not have understood the legal effect of the entirety clause and may have honestly believed that his assignment to Gast conveyed only an interest in the oil produced from the 80 acre tract that there came a time when he no longer honestly and in good faith adhered to this position. The legal position assumed by W. D. Grisso, W. E. Grisso's attorney, in his correspondence with Carter was untenable and without merit and the tenor of the correspondence lends itself to the suspicion that the request for delay was not made in good faith and with no honest intent on Grisso's part to work out the matter with his assignees. No attempt, as far as the record reveals, was made by either the attorney son or his father to contact his assignees or have a legal determination of the matter. For some inexplainable reason at the end of this correspondence no further attention seems to have been paid to this matter by Carter and for a like inexplainable reason while Gast and his assignee, Crude Oil Company, had constructive knowledge of the provisions of the lease and their rights thereunder no attention was paid to the matter by them for approximately twenty-four years, although it had knowledge that the 40 acre tract was producing oil during all this period of time.[5]

There is no evidence in the record which remotely tends to support a conclusion that Carter Oil Company was guilty of active or intentional fraud or that it intentionally connived with Grisso to aid him in defrauding his assignees. We, however, feel that the trial court's conclusion that Grisso intended to and did actively defraud his assignees is amply sustained by the record.

5. Gast, who was Vice President and Manager of Crude Oil Company, testified that he knew of the well on the 40 acres. His testimony indicates that he knew of this well shortly after it was drilled.

While there is no fiduciary relationship between tenants in common, if one co-tenant comes into possession of funds belonging to his co-tenant, he becomes trustee of such funds and stands in fiduciary relationship to his co-tenant with respect thereto.[6] When Carter Oil Company with knowledge of the co-tenancy paid Grisso money which belonged to his co-tenants, it became chargeable as a matter of law with knowledge of the fiduciary relationship created by such payment between Grisso and his co-tenants. The trial court's finding that Carter had reason to believe that Grisso was misappropriating these funds is supported by inferences fairly deducible from the testimony in the record. It knew enough of the facts to put it upon notice as to his misdeeds.

This case is identical in principle with Humble Oil & Refining Company v. Campbell, 5 Cir., 69 F.2d 667, and substantially identical upon the facts. In that case it was held that where an oil company knew or had facts in its possession which put it on notice that a trustee was misappropriating trust funds and continued paying such funds to the trustee without protest or without notice to the beneficiaries of the misappropriation, it became liable to them for funds so misappropriated. It is our conclusion that Carter Oil Company, although intending no wrong, became liable to Crude Oil Company, Grisso's co-tenant, for the misappropriated funds and that judgment was properly entered against it, unless laches on the part of appellees was a bar to their claim.

As pointed out, Crude Oil Company had constructive knowledge of the lease and its rights under the entirety clause. It thus knew as a matter of law that it had an interest in the production from the well on the 40 acre tract. It also had actual knowledge of the existence of the well from almost the beginning. Carter Oil Company certainly did not actively seek to withhold information from it with respect to the well or its interest under the entirety clause. Crude Oil Company sat by for twenty-seven years without curiosity or inquiry as to its rights under the lease. Oklahoma has held that under certain conditions one claiming an interest under instruments of record has a duty to improve with diligence the opportunity of learning that which the record discloses and that failing to do so constitutes laches. In Webb v. Logan, 48 Okl. 354, 150 P. 116, the Oklahoma Court approved the rule announced by the Supreme Court of Kansas in Black v. Black, 64 Kan. 689, 68 P. 662, and explained by the Kansas Court in Hutto v. Knowlton, 82 Kan. 445, 108 P. 825, as follows: "Where a public record is required by law to be kept as a source of information respecting property rights and interests, a duty rests upon any one to whom the information is material to improve with diligence the opportunity of learning that which the record discloses. It follows that, if the opportunity be neglected, the interested person will be bound to the same extent as if he had in fact examined the record. But the rule is no broader than its basis, and if for any reason no obligation exists to consult the record, or if the interested person be circumvented from taking advantage of his opportunity, the rule does not obtain." [48 Okl. 354, 150 P. 118.] That rule was laid down with respect to the duty of heirs of an estate to examine an administrator's final report which by law he was required to file for the information of the heirs.

The law does not require that a deed or instrument of conveyance be filed of record. The purpose of recording such instruments is to give notice to all who seek to acquire an interest in such property. The facts in this case, therefore, do not clearly bring it within the rule announced in the Black case. The Oklahoma Court in the Webb case, supra, refused to apply the rule announced in the Black case to a deed of record and held that a deed of record was not notice to the grantor of the fraudulent inclusion of land not intend-

6. Ludey v. Pure Oil Co., 157 Okl. 1, 11 P.2d 102; Silver King Coalition Mines Co. v. Conkling Mining Co., 8 Cir., 255 F. 740; Silver King Coalition Mines Co. of Nevada v. Silver King Consolidated Mining Co. of Utah, 8 Cir., 204 F. 166.

ed to be conveyed and that failure to make timely inquiry as to its contents did not constitute laches.

In Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 585, 90 L.Ed. 743, the Supreme Court said the rule adopted by it was that "where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.'" The question of laches was also present in Humble Oil Company v. Campbell, supra. The court there held that inaction on the part of the defrauded beneficiaries even though for a long time would not constitute laches so as to bar the action where the defendant was not misled by anything they knowingly did. The court stressed the fact that there was wrong-doing by an express trustee whereby he deliberately defrauded the beneficiaries under circumstances which the defendant knew in part in fact and entirely as a matter of law. Like in that case, the continued concealment and fraud of Grisso was made possible by the inattention of Carter Oil Company to conditions it knew existed and by its acquiescence and silence and continued payment of the funds to the wrong-doer. By such conduct, it brought about conditions which made possible the fraud. The long delay on the part of Crude is in part excused, or at least explained, by the fact that when it acquired this interest neither it nor Grisso thought it conveyed any interest in the 40 acre tract. Under all the facts we do not feel that the equitable doctrine of laches should be applied to bar a recovery.

The judgment appealed from is, therefore, affirmed.

MURRAH, Circuit Judge (dissenting).

I agree that Grisso is not an indispensable party when the suit is judged on the issue as defined by the trial court to obviate indispensability; thus defined however, I would apply the five-year statute of limitations. In deciding the question of indispensability, the trial court treated the suit as one for an accounting for a breach of the lease contract, under which Carter agreed to pay Crude for a fractional interest of the oil produced from the leased premises. As we have seen, the lease contract created no fiducial relationship, and no obligation other than to pay the stipulated royalty. Failure to do so rendered Carter liable for a breach of the lease contract. Viewed in this light, the suit is not grounded in equity, and the allegations of fraud are relevant only as a defense to the anticipated plea of the statutory bar.

After treating the suit as one in law for breach of a contract for purposes of indispensability, the trial court then treated it as in equity, based upon fraud for purposes of liability. And, having found Grisso and Carter guilty of a conspiracy to defraud Gast and his successors, the trial court of course had no difficulty rejecting the plea of laches. My brethren have chosen to treat the case as in equity for purposes of indispensability and liability. They have completely exonerated Carter of any act of fraud or corrupt motive. They have, however, sustained the trial court's findings of fraud on the part of Grisso, not as a conspirator with Carter, but as an unfaithful trustee of his cotenant. Having convicted Grisso, who is not on trial, they proceed to fasten his fraud on Carter by charging it with knowledge of Grisso's misappropriation. They apparently do so on what to me is a fallacious theory that Carter was under some duty to reveal to Crude the provisions and legal effect of Carter's lease. At the same time, they agreed that Crude had constructive notice of the terms and conditions of the lease and the duty to diligently improve its knowledge concerning all of the information it disclosed. In short, Carter is charged with having failed to reveal to Crude that for which Crude had constructive notice and the consequent duty to discover.

Of course equity will not bar a claim against one who has been guilty of inequitable conduct with respect to the subject matter of the claim. Indeed, equity will not bar a claim unless it is equitable to do so. Oldland v. Gray, 10 Cir., 179 F.2d

408. But, the rule presupposes fraud on the part of one who imposes laches as a defense, and it also presupposes excusable ignorance on the part of one who would avoid the bar of laches. Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743. The claimants were justifiably ignorant of the fraud in Humble Oil & Refining Co. v. Campbell, 5 Cir., 69 F.2d 667, relied upon by the majority. And, it is also significant that the trustee was a party to the suit in that case.

To me, it is wholly inconsistent with equity and good conscience to try and convict one for innocently contributing to the fraud of one who is not on trial. Certainly Grisso is an indispensable party to the suit wherein Carter is tried for merely failing to reveal a fraud to which it is admittedly not a party. If the suit is one in contract, and I think it is, Grisso is not an indispensable party and the five-year statute of limitations is clearly applicable. If, however, the suit is in equity for fraud, and fraud is the basis for recovery, the party who is said to be guilty of fraud is an indispensable party. In either event, I would reverse the case.