TRAVELERS INDEM. CO. v. J. S. RAMSTAD CONST. CO., Inc. et al. (GENERAL CAS. CO. OF AMERICA, Third Party Defendant).

No. A–8860.

District Court, Alaska
First Division, Anchorage.

Feb. 5, 1954.

H. L. Faulkner (of Faulkner, Banfield & Boochever), Juneau, Alaska, for plaintiff.

Raymond E. Plummer, Anchorage, Alaska, for Morrison-Knudsen Co. and Peter Kiewit Sons' Co.

Gerald DeGarmo (of DeGarmo, Leedy & Oles), Seattle, Wash., for M–K & PK.

John E. Manders, Anchorage, Alaska, for Ramstad.

Edward V. Davis, Anchorage, Alaska, for General Cas. Co.

FOLTA, District Judge.

Morrison-Knudsen Co., Inc. and Peter Kiewit Sons' Co., a corporation, entered into a joint adventure (hereinafter referred to as M–K) for the completion of a contract with the United States. M–K, as prime contractor, entered into what are termed the "Outside Utilities" and the "Railroad" subcontracts with J. S. Ramstad Construction Co., Inc. (hereinafter referred to as Ramstad), to secure the performance of which, bonds in the sum of $618,550 and $318,000, subject to the usual conditions, were furnished by plaintiff Travelers Indemnity Co. and defendant General Casualty Co., respectively (hereinafter referred to as Travelers and General). On several occasions in March and May, 1952, M–K notified Ramstad and Travelers that Ramstad's performance of these subcontracts was unsatisfactory and demanded permission to take over both jobs to avoid substantial loss. This request, however, was denied on May 14, 1952. After Ramstad's failure to meet a payroll of $34,500 and

M–K's notification to Ramstad and the surety of its election to do so, M–K undertook the completion of the subcontracts on May 18, 1952. On June 16, 1953 M–K submitted a statement of indebtedness due from Ramstad and the surety on account of the subcontracts, and demanded payment. Of the aggregate amount of $657,345.57, M–K believes that $639,120.89 is allocable to the Outside Utilities and $18,224.68 to the Railroad subcontracts. While these formal demands were being made against Ramstad and the surety, Travelers commenced this action against M–K and Ramstad, alleging that Ramstad had certain claims, counterclaims and offsets against M–K which ought, in equity and good conscience, to be applied to diminish the amount claimed to be due to M–K by reason of default' in the performance of the Outside Utilities subcontract, and praying that M–K and Ramstad be ordered to plead and set forth their claims; that the claims be adjudicated; that the claims of one against the other be offset and a balance struck, so that the plaintiff surety may be exonerated pro tanto.

It is obvious that the complaint is in reality a defensive pleading. Although it is framed as a bill in equity to determine the rights and liabilities of the several parties, its object appears to be declaratory relief.

Before answer, defendant M–K's ex parte motion to implead General was allowed on August 10, 1953. Thereafter M–K filed a pleading of a rather startling nature, but hardly inappropriate in the circumstances, entitled "Answer, Counterclaim and Cross-Complaint and a Further Answer, Counterclaim, Cross-Complaint and Third Party Complaint". The tenor of this pleading is not defensive but rather one which serves to state claims against Travelers, Ramstad and General.

Examination of these pleadings reveals that there are no substantial facts in issue. Travelers alleges that M–K breach-ed the subcontracts by not allowing Ramstad to complete them. M–K contends that Ramstad breached the contracts by failing to meet the payroll; that Travelers and General refused to finance Ramstad to enable it to complete the subcontracts and that, as a consequence, M–K was obliged to take over the work at considerable expense to itself in order to prevent further losses. Aside from the issue of liability, raised by Travelers, the main bone of contention appears to be the allocation of items of damages between Travelers and General. On oral argument counsel for M–K stated that the main controversy concerns "what amounts are chargeable against Travelers or * * * against * * *," and directed attention to exhibit "C", consisting of a great many invoices of material and other services purchased or obtained by Ramstad during the performance of these two subcontracts from M–K. As to these items, counsel stated:

"We had no way of determining when he made those purchases whether he was purchasing the materials for the Railroad contract, which General was surety for, or for the Outside Utilities Contract, for which Travelers was the surety. * * * When we prepared the claim we went through Exhibit 'C' * * * and we segregated those charges as nearly as we were able to from the information in our possession. * * * So we were faced with the question that we had a claim against Ramstad. We did not know and we do not know to this day exactly how much of it is a proper claim against Travelers under its bond and how much of it is a proper claim against General under its bond and they were so informed upon the demand made upon them for payment." (Transcript, pp. 20–21.)

The foregoing resumé suffices to show that the difficulties encountered by M–K stem from the fact that actually its relationship to this controversy is that of plaintiff, while the relationship of Trav-

elers, Ramstad and General is that of defendants. Their position, in the state of the present pleadings, may be diagrammed as follows:

Whereas their true positions in this controversy would appear to be as set forth below:

■ Because of the differences between the artificial positions of the parties litigant and their actual positions in relation to each other in this action, the Court is faced with a dilemma. The controversy ought to be disposed of in one suit, but it is manifest that under Rule 14, F.R.C.P., 28 U.S.C.A., General cannot be impleaded by M–K, because General cannot be liable to M–K for any part of Travelers' claim against M–K. The anomaly here is that in effect Travelers has no claim at all against M–K. As has already been pointed out, the complaint of Travelers is actually a defensive pleading.

■ As the suit now stands, all the parties are before the Court. The Court is inclined to avoid the question of jurisdiction which lurks in this case because of Reese v. Fultz, D.C., 13 Alaska 227, 96 Fed.Supp. 449. In order to achieve equity in this case, the Court will apply the doctrine of rearrangement or realignment of parties occasionally resorted to in federal diversity cases, of which City of Indianapolis v. Chase National Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47, rehearing denied, 314 U.S. 714, 62 S.Ct. 356, 86 L.Ed. 569; Metropolis Theatre Co. v. Barkhausen, 7 Cir., 170 F.2d 481, certiorari denied, 336 U.S. 945, 69 S.Ct. 812, 93 L.Ed. 1101; Knaus Truck Lines v. Mair, D.C., 85 F.Supp. 101, are illustrative. The Court is fully aware of the extraordinary nature of this step and that the doctrine of realignment has been used only in diversity cases. I am of the opinion, however, that the Court has inherent power to require the parties to align themselves properly for convenience and expediency.

■ Even after Travelers commenced this action, M–K could have commenced a suit against Ramstad, General and Travelers and then moved for an order of consolidation. In that situation, General could move only for a severance or a separate trial. In the final analysis, the gist of the three motions for vacation of the order allowing impleader is the inconvenience to Travelers and General which would ensue. In spite of the cogent arguments of counsel for Travelers, Ramstad and General, it is the opinion of the Court that all matters in controversy should be settled in one action, with one trial. If no objections to the proposed order are filed in 14 days from the entry hereof, an order directing realignment of the parties so that M–K will be the plaintiff and Ramstad, General and Travelers the defendants, may be presented. The parties will be allowed to amend their pleadings by merely designating the change rather than by submitting new pleadings. Upon realignment, the motions to vacate the order of impleader would, of course, become moot.